**Santiago PEDRO–MATEO, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 98–70535**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 10, 2000.

Filed Sept. 14, 2000.

Denis W. Campbell, Law Offices of Curiel & Parker, Santa Monica, California, for the petitioner.

Michelle Gluck and John D. Williams, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for the respondent.

Before: WALLACE, PREGERSON, and THOMAS, Circuit Judges.

Opinion by Judge WALLACE; Concurrence by Judge PREGERSON

WALLACE, Circuit Judge:

Pedro–Mateo petitions for review of a decision by the Board of Immigration Appeals (Board) denying him relief from deportation. The Board exercised jurisdiction pursuant to 8 C.F.R. § 3.1(b). Because Pedro–Mateo's deportation proceedings commenced before April 1, 1997, and a final order of deportation was entered after October 30, 1996, we have jurisdiction over his petition pursuant to 8 U.S.C. § 1105a, as amended by section 309(c) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. *See Avetova–Elisseva v. INS*, 213 F.3d 1192, 1195 n. 4 (9th Cir.2000). We deny the petition.

## I

Pedro–Mateo is a Kanjobal Indian from Guatemala. In October 1991, he was kidnaped by soldiers from his village in the highlands of Huehuetenango. While in custody, Pedro–Mateo was beaten repeatedly after he refused the soldiers' demands that he join the army. When the army discovered that Pedro–Mateo was less than 18 years old, they released him.

A few weeks later, Pedro–Mateo was kidnaped again, this time by the guerrillas. He once again refused to join, and once again was beaten. The guerillas held him for several days until they, too, discovered that he was less than 18 years old and released him.

Three months later, Pedro–Mateo entered the United States without inspection at Nogales, Arizona.

## II

Section 208(a) of the Immigration and Nationality Act (Act), 8 U.S.C. § 1158(a), gives the Attorney General discretion to allow political asylum to any alien the Attorney General determines to be a "refugee" within the meaning of section 101(a)(42)(A) of the Act. 8 U.S.C. § 1101(a)(42)(A). A refugee is defined as an alien unwilling to return to his country of origin "because of persecution or a well-founded fear of persecution on account of

race, religion, nationality, membership in a particular social group, or political opinion." *Id.* To establish eligibility on the basis of a "well-founded fear of persecution," an alien's fear of persecution must be both subjectively genuine and objectively reasonable. *Arriaga–Barrientos v. INS,* 925 F.2d 1177, 1178 (9th Cir.1991). "The objective component requires a showing, by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution." *Id.* at 1178–79. The applicant has the burden of making this showing. *Duarte de Guinac v. INS,* 179 F.3d 1156, 1159 (9th Cir.1999).

Section 243(h) of the Act, 8 U.S.C. § 1253(h), requires the Attorney General, subject to certain exceptions not relevant here, to withhold deportation "if the Attorney General determines that such alien's life or freedom would be threatened ... on account of race, religion, nationality, membership in a particular social group, or political opinion." An alien is statutorily eligible for such relief only when he demonstrates a "clear probability of persecution," defined as it being "more likely than not" that the alien will be persecuted if deported. *Acewicz v. INS,* 984 F.2d 1056, 1062 (9th Cir.1993) (internal quotation omitted). A failure to satisfy the lower standard of proof required to establish eligibility for asylum therefore necessarily results in a failure to demonstrate eligibility for withholding of deportation. *Ghaly v. INS,* 58 F.3d 1425, 1429 (9th Cir.1995). Thus, for purposes of this opinion, we will focus on whether Pedro–Mateo proved that he was eligible for asylum.

The Board's purely legal interpretations of the Act are reviewed de novo, but are generally entitled to deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Ghaly,* 58 F.3d at 1429. The Board's factual determinations, including its finding of whether an applicant has demonstrated a "well-founded fear of persecution," are reviewed for substantial evidence. *INS v.*

*Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). Under the substantial evidence standard of review, the court of appeals must affirm when it is possible to draw two inconsistent conclusions from the evidence. *Lambert v. Ackerley,* 180 F.3d 997, 1012 (9th Cir.1999) (en banc). The substantial evidence standard of review is "highly deferential" to the Board, *Pal v. INS,* 204 F.3d 935, 937 n. 2 (9th Cir.2000), and for us to disturb the Board's decision, Pedro–Mateo must show that "the evidence not only *supports* ... but *compels*" reversal. *Elias–Zacarias,* 502 U.S. at 481 n. 1, 112 S.Ct. 812 (emphasis in original).

### III

Pedro–Mateo raises the issue of whether "forced recruitment" by the Guatemalan government or the guerillas should be considered persecution "when it is directed in a discriminatory manner," implying that if the answer is yes, he should prevail. However there is an initial question: whether Pedro–Mateo has established that he was forcibly recruited *on account of* any of the statutorily prohibited reasons. 8 U.S.C. § 1101(a)(42)(A).

At the deportation hearing, the immigration judge (IJ) found that Pedro–Mateo had presented "no evidence whatsoever that [he] was persecuted on account of his religion as a Catholic or as an indigenous Indian," as Pedro–Mateo claimed. On appeal, the Board agreed, finding that Pedro–Mateo failed to establish that either the military or the guerillas were interested in recruiting him for any reason other than his physical presence in a particular war torn region of Guatemala.

In his petition, Pedro–Mateo argues that the Board's ruling should be overturned because "there is adequate evidence in the record to show that [he] was persecuted because of his race and his membership in a particular social group." Pedro–Mateo's descriptions of his social group, however, are shifting and muddled. In his trial brief before the IJ, he referred loosely to both the "Indian race in Gua-

temala" and the "Indians in the rural highlands" as a race, nationality, and social group. At the hearing before the IJ, his attorney's description was narrower, identifying the "Mayan Konjobao [sic] Indian" as "a social group of rural highland Indian dweller[s]." In his brief on appeal to the Board, he asserted that the "Mayan villages of western Guatemala are distinctive and cohesive social groups." His brief to this court describes his social group as "indigenous [people] occupying a conflicted area in the fight between the government and the guerrillas," while the reply brief simply identifies "Indigenous people" as his social group. In addition to the fact that there is no such evidence in the record, the Supreme Court specifically held in *Elias–Zacarias* that "to reverse the [Board] ... we must find that the evidence not only *supports* that conclusion but *compels* it." 502 U.S. at 481 n. 1, 112 S.Ct. 812 (emphasis in original).

Pedro–Mateo points to items in the record purporting to demonstrate the merit of his position. These items (such as an Amnesty International report, a report prepared by an immigration law clinic at a law school, and a book about the Guatemalan war) do not indicate that the Kanjobal Indians have been recruited *because* of their race, political opinion, or any other protected ground. What they indicate, tragically, is that wherever the guerillas clash with the Guatemalan Army, civilians are forcibly recruited by both sides to serve in the conflict.

■ According to the State Department report, Indians account for forty-four percent of the Guatemalan population, and they comprise the vast majority of the countryside where the guerrillas are active. When great numbers of civilians in disputed areas are forcibly conscripted by both sides in a guerilla war, it is inevitable that rural Indians will be among them in substantial numbers. To qualify for asylum, however, an alien's predicament must be "appreciably different from the dangers faced by the alien's fellow citizens." *Vides–Vides v. INS*, 783 F.2d 1463, 1469 (9th Cir.1986). Indigenous people comprising a large percentage of the population of a disputed area have not been demonstrated to be a "social group." Pedro–Mateo offers neither case law nor analysis to contradict our previous statement that the "prototypical example" of a social group would be "immediate members of a certain family." *Sanchez–Trujillo v. INS*, 801 F.2d 1571, 1576 (9th Cir. 1986) (rejecting suggestion that "young, working class, urban males of military age" in El Salvador could be considered a social group for which the immigration laws provide protection from persecution); *see also Li v. INS*, 92 F.3d 985, 987 (9th Cir.1996) (rejecting "low economic status" as social group). We hold that Pedro–Mateo has failed to prove persecution on account of his "membership in a particular social group." 8 U.S.C. § 1101(a)(42)(A).

■ Absent evidence to compel an alternate conclusion, this case is squarely controlled by *Elias–Zacarias,* where the Supreme Court held that absent evidence of discriminatory purpose, a guerilla organization's attempts to force a person to join them is insufficient to compel a finding of persecution on account of political belief. *Elias–Zacarias,* 502 U.S. at 482–83, 112 S.Ct. 812. Pedro–Mateo's situation is substantially the same as Elias–Zacarias'. He

> objects that he cannot be expected to provide direct proof of his persecutors' motives. We do not require that. But since the statute makes motive critical, he must provide *some* evidence of it, direct or circumstantial. And if he seeks to obtain judicial reversal of the [Board's] determination, he must show that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution. That he has not done.

*Id.* at 483–84, 112 S.Ct. 812.

PETITION DENIED.

PREGERSON, Circuit Judge, concurring in the result:

I concur in the denial of relief because there is absolutely no evidence in the ad-

ministrative record that either the Guatemalan military or the guerrillas attempted to recruit Pedro–Mateo because he is Kanjobal Indian. Thus, neither of the two grounds for relief that Pedro–Mateo raises on appeal, race and membership in a social group, have merit. That is all that the court needs to decide to resolve this case.

I write separately, however, for two reasons. First, because no *evidence* supports Pedro–Mateo's petition, it is not necessary for the court to decide whether Mayan Indians of Guatemala comprise a "social group" within the meaning of 8 U.S.C. § 1101(a)(42)(A). The majority's overreaching is particularly inappropriate because the social group identified by Pedro–Mateo is considerably narrower than the entire indigenous population of Guatemala.

Second, while Pedro–Mateo's petition fails for lack of evidence, I do not read the opinion as foreclosing relief to another asylum applicant who proceeds on the same theory as did Pedro–Mateo. In other words, an asylum applicant is entitled to relief if he shows that an army selectively recruited members of a protected group, regardless of whether the army also conscripted "a large percentage of the population of a disputed area."