**HU ZHE JIN, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General, Respondent.**

No. 04–71081.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 12, 2006.

Filed Dec. 5, 2006.

Charles J. Kinnunen, Esq., Hagatna, GU, for Petitioner.

Ronald E. LeFevre, Chief Counsel, Office of the District Counsel, San Francisco, CA, Stacy S. Paddack, Anthony W. Norwood, Esq., U.S. Department of Justice, Washington, DC, District Director, Office of the District Director, Hagatna, GU, for Respondent.

Before: B. FLETCHER, PREGERSON, and CANBY, Circuit Judges.

MEMORANDUM *

An immigration judge ("IJ") denied Hu Zhe Jin's application for asylum, and the

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Board of Immigration Appeals ("BIA") affirmed. Both the IJ and the BIA held that Jin had failed to meet his burden of proving that his fear of future persecution was objectively reasonable. Jin appealed. We now affirm.

Because the parties are familiar with the facts of the case, we do not recite them here.

## I.

Jin first argues that the IJ and the BIA erred on the merits of his asylum claim. He contends that his testimony at the asylum hearing constitutes evidence sufficient to support his claim of future persecution. We review the BIA's decision under the "substantial evidence" standard, meaning that we must affirm the BIA's ruling unless the record "not only *supports* [the conclusion that Jin has established his eligibility for asylum], but *compels* it." *INS v. Elias–Zacarias*, 502 U.S. 478, 478 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (emphasis in original); *see also Pedro–Mateo v. INS*, 224 F.3d 1147, 1150 (9th Cir.2000) ("Under the substantial evidence standard of review, the court of appeals must affirm when it is possible to draw two inconsistent conclusions from the evidence.").

Here, Jin—a Chinese citizen of Korean ethnicity—testified about three episodes of mistreatment during his time in China. First, he testified that his parents were accused of being Korean spies during the Cultural Revolution and that as a result of these accusations and the torture of his father, he fears persecution. Second, he testified that as a child in the Yanbian Korean Autonomous Prefecture he was subjected to depressed living conditions, harassment, and physical abuse on account of his Korean ethnicity. Third, he testified that he became an opponent of the Communist regime and an activist for the autonomy of ethnic Koreans in Yanbian; he testified that he attended meetings of other like-minded activists and that, after the police broke up one of these meetings (from which he fled without arrest), two Korean colleagues were deported and another member of the group, a Chinese citizen of Korean ethnicity, was imprisoned for five years. He claims that he reasonably fears persecution as a result of these activities and that his family has warned him not to return to Yanbian. Jin argues that this testimony supports his claim for asylum on account of either his Korean ethnicity or his political opinion.

Because both the IJ and the BIA affirmatively held that Jin was credible, we accept his testimony as true. *See Castro–Perez v. Gonzales*, 409 F.3d 1069, 1071 (9th Cir.2005). Even so, we hold that the evidence he presented does not compel the conclusion that his fear of future persecution was objectively reasonable. Although the testimony Jin provided about his family's experiences during the Cultural Revolution is "probative" of his claim for asylum, "when evidence regarding a family history of persecution is considered, the relationship that exists between the persecution of family members and the circumstances of the applicant must be examined." *Navas v. INS*, 217 F.3d 646, 659 n. 18 (9th Cir.2000). Here, the experiences of his family during a period of widespread political turbulence in the People's Republic of China do not compel the conclusion that Jin himself now has reason to fear persecution, nor, according to State Department country reports, are they indicative of what Jin's experience would be like in contemporary Jilin Province.

Similarly, Jin's testimony about the economic deprivation he has endured on account of his family's Korean ethnicity is also insufficient to compel the conclusion that the BIA's decision was erroneous. In general, "mere economic disadvantage

alone does not rise to the level of persecution," *Gormley v. Ashcroft*, 364 F.3d 1172, 1178 (9th Cir.2004), and Jin has not demonstrated that the deprivation he suffered was so severe as to constitute a threat to his life or freedom, *see Baballah v. Ashcroft*, 367 F.3d 1067, 1076 (9th Cir.2004). In opposition to Jin's suggestive testimony, the State Department reports that as many as 800,000 ethnic Koreans currently live in the Yanbian Korean Autonomous Prefecture, where the government's official policy is to preserve traditional Korean language and customs, where ethnic Koreans actually enjoy preferences in admission to universities due to their status as an ethnic minority, and where ethnic Koreans participate at various levels of city, regional, and provincial government.

Likewise, Jin's testimony about being harassed while growing up in Yanbian does not compel the finding that his fear of future persecution is objectively reasonable. *See Nagoulko v. INS*, 333 F.3d 1012, 1016–17 (9th Cir.2003) (holding that an applicant's testimony did not compel a finding of persecution where the alien was "teased, bothered, discriminated against and harassed because of her Pentecostal religious beliefs"); *Prasad v. INS*, 47 F.3d 336, 339–40 (9th Cir.1995) (holding that an applicant's detention and abuse by military officials did not compel a finding of persecution). In light of the contemporary context of the Yanbian Korean Autonomous Prefecture, we are unable to conclude that Jin's vague discussion of being "abused from time to time" while going "to school" is sufficient to compel the conclusion that, as a grown man nearly twenty years later, Jin would have reason to fear persecution by the Chinese.

Finally, Jin's testimony about his involvement in a political group advocating the autonomy of ethnic Koreans in China's Yanbian region does not compel the conclusion that his fear of future persecution is objectively reasonable. Jin has suffered no adverse consequences as a result of his involvement in the group—he has presented no evidence that he or his family members have ever been questioned, investigated, detained, or abused as a result of his association with the "autonomous region advocates." Moreover, he has presented no evidence that similarly situated individuals have suffered any negative consequences for political activities; the only individuals to have been punished as a result of the activities Jin described were two non-Chinese citizens, who were deported, and the group's ringleader, who was imprisoned. By contrast, Jin returned to China without incident in 1993, albeit to a different city, and has received no direct indication that Chinese authorities are aware of or interested in him as a participant in a political meeting that took place twenty-five years ago. *See Belayneh v. INS*, 213 F.3d 488, 491 (9th Cir.2000) (noting that return trips to a country of origin may rebut a threat of persecution). While we in no way condone any abuse that may have occurred as a result of political meetings conducted by Jin and his ethnic Korean colleagues, the record in this case does not compel the finding that his fear of future persecution is reasonable, and we therefore must uphold the BIA's decision.

## II.

Jin also argues that the BIA abused its discretion by issuing an opinion that failed to address in detail the evidence he submitted in support of his asylum application. He contends that the BIA's "boilerplate" opinion fell short of the minimum requirement that BIA must assess the evidence proffered by an asylum applicant and provide a cogent explanation of its disposition. In support of this argument, he cites this

Court's decisions in *Velarde v. INS*, 140 F.3d 1305 (9th Cir.1998), in which we held that the BIA must provide "a reasoned explanation based upon legitimate concerns" in order to facilitate a "meaningful review" of its decision on appeal. *Id.* at 1306.

We hold that the BIA provided a reasoned explanation of its decision and that the decision was based upon legitimate concerns. The BIA's opinion stated that "respondent's testimony, although credible, does not establish that the respondent experienced past persecution in China ... [because] [t]he aggregate of the respondent's experiences and the general discrimination described by the respondent do not rise to the level of persecution." Further, the opinion explained that "the respondent failed ... [to] prove that he has a well-founded fear of future persecution," in part because he had safely returned to China in 1993, following the incidents giving rise to his ostensible fear of future persecution.

The BIA's decision, though brief, was sufficiently detailed and reasoned to facilitate our review on appeal. Jin's objection that the BIA did not explicitly consider each aspect of the evidence presented in support of his appeal is without merit. The BIA need not identify all of the evidentiary minutiae of a case to demonstrate that it has given careful attention to a petitioner's claim. Rather, "all that is necessary is a decision that sets out terms sufficient to enable [the] reviewing court to see that the [BIA] has heard, considered, and decided." *Villanueva–Franco v. INS*, 802 F.2d 327, 330 (9th Cir.1986). Here, the BIA described "[t]he aggregate of the respondent's experiences and the general discrimination described by the respondent" and held that these experiences failed to establish persecution. In conjunction with the record on appeal, this description was sufficiently detailed to permit effective review of the BIA's ruling.

Nor did the BIA's attenuated incorporation of supposedly "boilerplate" language from State Department country reports constitute an abuse of discretion. The BIA did not itself rely on the State Department reports to reach its conclusions—these reports are indirectly part of the BIA's opinion only to the extent that it implicitly adopted the IJ's factual findings, which in turn were informed by the State Department reports. More importantly, the BIA's reliance on the State Department's reports, however attenuated, did not function as a substitute for reasoned consideration of the unique facts of Jin's claim. Instead, the country reports were considered only to explain why, given the social and political context of Jin's unique claim, his testimony failed to establish a well-founded fear of future persecution. Contrary to Jin's argument on appeal, the record demonstrates that the BIA has "give[n] reasons for its decision[ ] showing that it has properly considered the circumstances" of Jin's individual case. *Santana–Figueroa v. INS*, 644 F.2d 1354, 1357 (9th Cir.1981).

### III.

For the foregoing reasons, Jin's petition for review of the BIA's decision is **DENIED.**

PREGERSON, Circuit Judge, specially concurring.

Both the IJ and the BIA concluded that Jin had failed to meet his burden of proving that his fear of future persecution was objectively reasonable. I agree. *See INS v. Elias–Zacarias*, 502 U.S. 478, 478 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992); *see also Pedro–Mateo v. INS*, 224 F.3d 1147, 1150 (9th Cir.2000).

Contrary to Jin's argument on appeal, the record demonstrates that the BIA has "give[n] reasons for its decision[ ] showing that it has properly considered the circumstances" of Jin's individual case. *Santana–Figueroa v. INS*, 644 F.2d 1354, 1357 (9th Cir.1981).