Opinion by Judge NOONAN; Dissent by Judge HALL.
NOONAN, Circuit Judge:
Garegin Kamalyan, a Jehovah’s Witness, petitions for review of the Board of Immigration Appeals’ (“BIA”) adopting and affirming the decision of the immigration judge (“IJ”). We grant the petition and remand.

FACTS

Kamalyan is a native of the U.S.S.R. and a citizen of Armenia. He applied for asylum on November 11, 2002, claiming religious persecution based on his status as a Jehovah’s Witness.
Kamalyan’s asylum application was premised upon two encounters with Armenian law enforcement in August 2001 and May 2002. In- the first encounter, *1056 Kamalyan and four other Jehovah’s Witnesses had gathered in his apartment to read and interpret the main book of their faith. Five police officers entered and began searching the apartment, confiscating the religious literature they found. When Kamalyan protested, one officer punched him in the face. The officers detained Kamalyan and his associates and transported them to a police station for interrogation because them activities were considered proselytizing forbidden by Armenian law. At the police station, the officers interrogated Kamalyan for three to four hours while punching him and beating him with sticks. After twelve hours of detention, he was released after his parents paid $1000 as a bribe.
In the second encounter, Kamalyan and another Jehovah’s Witness were proselytizing near a university. Four police officers told them that “the law in Armenia forbade proselytizing except by the official church” and detained them separately. The officers interrogated Kamalyan and beat him when he refused to answer questions. After three to four hours, the officers offered to drop the criminal charges against him in exchange for a bribe of $1500. Kamalyan’s father brought the bribe the following day, and the officers released Kamalyan.

PROCEEDINGS

The IJ found Kamalyan’s testimony to be credible and concluded that he had suffered past persecution on account of his religion. “This raises the presumption,” the IJ continued, “that [he] would continue to have a well-founded fear of persecution if he returned to Armenia. That presumption may be rebutted by changed country conditions.”
Kamalyan provided some testimony about current conditions in Armenia. Portions of this testimony indicated that conditions had improved. His religion was “legalized” or “became official” approximately one month before the hearing. The IJ asked if he knew whether Jehovah’s Witnesses could now legally proselytize. He answered, “Should be, because the faith itself is legal now.” Despite these changes, Kamalyan stressed that he would be persecuted if he returned to Armenia, explaining, “[Armenia] accepted that law to be able to join the European Union; but it is only on paper.” He testified that law enforcement still arrested Jehovah’s Witnesses for proselytizing: “I’m very sure, I’m positive that such things are still going on in Armenia.”
The IJ began her oral decision by declaring:
General evidence of changed country conditions, which does not relate specifically to the [applicant’s] situation, may not overcome detailed and specific testimony by the [applicant] regarding conditions in the country of origin. In this case, the [applicant’s] testimony about current conditions in Armenia was not detailed and specific.
The IJ continued: “Because the [applicant’s] testimony was somewhat vague with regard to very recent current conditions in Armenia, the Court may look to general background documents for an explanation of those conditions.”
The IJ then reviewed two U.S. State Department country reports on Armenia titled International Religious Freedom Report 2001 (“2001 Report ”) and Country Reports on Human Rights Practices 2003 (“2003 Report ”). From these reports, the IJ drew several conclusions. First, Jehovah’s Witnesses now had the ability to register as a recognized religion in Armenia. Second, any ban on proselytizing “was not enforced, and all denominations, including Jehovah’s Witnesses, could advocate their point of view.” The IJ also found that “there are no longer problems *1057 in renting meeting places for Jehovah’s Witnesses” and they “are allowed to bring in small quantities of printed materials for their own use.” The IJ believed this information to be “relevant to [Kamalyan’s] case because he indicated that his group of Jehovah’s Witnesses had to meet in private homes because they were unable to rent a meeting place and that his first arrest was precipitated by the finding of small quantities of printed material from the Jehovah’s Witnesses in his own home.” Finally, the IJ noted that Armenia had passed a law accommodating conscientious objectors to military service.
From these facts, the IJ concluded that Kamalyan’s fear of mistreatment by the police was no longer reasonable. The BIA adopted and affirmed the IJ’s decision.

ANALYSIS

We review the denial of asylum for substantial evidence and uphold the denial if it is “supported by reasonable, substantial, and probative evidence on the record considered as a whole.” Li v. Holder, 559 F.3d 1096, 1102 (9th Cir.2009). Findings of fact are conclusive unless “any reasonable adjudicator” would be compelled to conclude to the contrary. 8 U.S.C. § 1252(b)(4)(B).
The IJ found Kamalyan to be credible and concluded that he had demonstrated past persecution on the basis of religion. This created a presumption that he had a well-founded fear of future persecution and was eligible for asylum, which could be rebutted only if the government demonstrated—by a preponderance of the evidence—that a fundamental change in country conditions dispelled any well-founded fear of future persecution. See 8 C.F.R. § 208.13(b)(1); Deloso v. Ashcroft, 393 F.3d 858, 863-64 (9th Cir.2005).
We agree with the IJ that Kamalyan’s testimony about current conditions in Armenia was unilluminating. We turn, then, to the country reports.
Our circuit has reiterated that “a State Department report on country conditions, standing alone, is not sufficient to rebut the presumption of future persecution when a petitioner has established past persecution.” Garcia-Martinez v. Ashcroft, 371 F.3d 1066, 1074 (9th Cir.2004) (quoting Molino-Estrada v. INS, 293 F.3d 1089, 1096 (9th Cir.2002)). Such reports are often “the most appropriate and perhaps the best resource for information on political situations in foreign nations.” Sowe v. Mukasey, 538 F.3d 1281, 1285 (9th Cir.2008). Nonetheless, they typically are not amenable to an “individualized analysis” tailored to an asylum applicant’s particular situation. See, e.g., Garcia-Martinez, 371 F.3d at 1074; Lopez v. Ashcroft, 366 F.3d 799, 805 (9th Cir.2004).
The country reports indicated that Jehovah’s Witnesses had obtained the ability to register as a recognized religion in Armenia. No evidence explained the meaning or significance of this event. The 2001 Report found “no overall change in the status of respect for religious freedom” in Armenia. Both Reports confirmed that even officially recognized religions were prohibited from proselytizing in Armenia. While the 2003 Report advised that the ban was not enforced, the 2001 Report recounted that complaints were lodged against Jehovah’s Witnesses “for proselytizing” and “some official warnings sent to Jehovah’s Witnesses because of proselytizing activities.”
Armenia’s attempt to accommodate Jehovah’s Witnesses’ objections to military service is not germane to the persecution experienced by Kamalyan. As the dissent acknowledges, “[a]t no time has Kamalyan claimed he was persecuted for refusing conscription.” The IJ’s reliance on this *1058 aspect of the reports evinces an analysis that strains to appear “individualized.”
Overall, the country reports were expressly inconclusive regarding the significance or permanence of the improvements identified by the IJ. The 200k Report summarized:
There was no overall change in the status of respect for religious freedom during the period covered by this report. According to legislation passed in November 2003, the Law on Alternative Military Service took effect on June 1, but had not been implemented by the end of the period covered by this report. ... In June, the Government again denied the Jehovah’s Witnesses application for formal registration as a religious organization. The registrar’s office cited technical problems with the application. Other denominations occasionally report acts of discrimination, usually by mid-level or lower level government officials.
Similarly, the 2003 Report concluded:
The Government’s human rights record remained poor; although there were some improvements in a few areas, serious problems remained.... Security forces beat pretrial detainees. Impunity remained a problem. There were reports of arbitrary arrest and detention. Lengthy pretrial detention remained a problem.... The law placed some restrictions on religious freedom. The Government continued to deny registration to and detain Jehovah’s Witnesses.
“Any reasonable adjudicator” would agree that the government did not establish a fundamental change in country conditions by a preponderance of the evidence. We grant Kamalyan’s petition for review. We remand the matter to the BIA with instructions to remand for further proceedings as to whether a fundamental change in country conditions has overcome the presumption that Kamalyan has a well-founded fear of future persecution. The dissent references the 2005 Country Report and the 2010 Country Report to show that Kamalyan faces no danger. Those reports were not before the IJ or the Board. On remand, they may be properly considered.
PETITION GRANTED; REMANDED.