**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



**FILED**

MAY 24 2013

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| M.N.H., | No. 11-73765 |
| Petitioner, | Agency No. A200-610-307 |
| v. | |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 10, 2013
Pasadena, California

Before: REINHARDT and MURGUIA, Circuit Judges, and LASNIK, District Judge.[**]

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]    The Honorable Robert S. Lasnik, U.S. District Judge for the Western District of Washington, sitting by designation.

Petitioner M.N.H.[1], a native and citizen of Bangladesh, petitions for review

of the decision of the Board of Immigration Appeals (BIA) affirming the denial of

his applications for asylum, withholding of removal, and relief under the

Convention Against Torture (CAT).  We have jurisdiction under 8 U.S.C.

§ 1252(a)(1).  For the reasons set forth below, we grant the petition and remand for

further proceedings.

As an initial matter, we reject the government's suggestion that we may

dismiss the petition for review on the basis that M.N.H.'s claims for relief were

unexhausted.  The BIA's decision addressing the merits of his claims cures any

failure to exhaust.  *Kin v. Holder*, 595 F.3d 1050, 1055 (9th Cir. 2010).

We hold that the agency's adverse credibility determination is unsupported

by substantial evidence.  In affirming the IJ's determination, the BIA relied solely

upon an inconsistency between M.N.H.'s testimony and that of the government

agents who testified at his hearing that M.N.H. stated, during an unrecorded and

untranscribed interview conducted by those agents, that he was affiliated with a

particular organization in Bangladesh.  We do not mean to cast doubt on the

---

[1]Petitioner claims, *inter alia*, that the BIA's opinion finding him to be a member of a particular organization in Bangladesh might result in his being subject to persecution if he were returned.  Out of sensitivity to that concern (and because our dispositions are publicly available on the internet) we refer to Petitioner by his initials only.

authority of an IJ or the BIA to credit the testimony of one witness over that of another, or of a government agent's over a petitioner's. The REAL ID Act, however, requires that an adverse credibility determination be based on the "totality of the circumstances"; an IJ may not simply ignore facts that would undermine its conclusion, but must instead "present a reasoned analysis of the evidence as a whole." *Shrestha v. Holder*, 590 F.3d 1034, 1040 (9th Cir. 2010) (internal quotation omitted); *see* 8 U.S.C. § 1158(b)(1)(B)(iii). Here, the IJ and BIA failed to take into account facts that are particularly relevant to the credibility determination, and which may well undermine the account given by the government agents. These facts include: (a) significant difficulties in translation and communication at the precise point in the interview that M.N.H. allegedly made the disputed statement; (b) country conditions materials suggesting that the political party to which M.N.H. (and numerous members of his family) indisputably belonged was opposed to—and occasionally the target of—the organization with which he allegedly asserted affiliation; (c) the failure of the government to corroborate the testimony of the agents with either their own written notes, the writing produced by M.N.H. himself in which he allegedly set forth the name of the organization, or the results of subsequent interviews performed by government agents with more knowledge of conditions in M.N.H.'s home country;

3

and (d) M.N.H.'s testimony in a transcribed credible fear interview, which was consistent with his testimony before the IJ regarding his lack of membership in that organization. The failure of the IJ and BIA to consider these significant facts along with the agents' statements prevents us from finding that the adverse credibility determination is supported by substantial evidence. *See Soto-Olarte v. Holder*, 555 F.3d 1089, 1091 (9th Cir. 2009).

Because we find that the agency's adverse credibility determination is unsupported by substantial evidence, we must reverse its determination that M.N.H. is not eligible for relief. The only evidence that the BIA took into account in considering his claim of eligibility for relief was evidence that did not require crediting M.N.H.'s testimony (namely, documentary evidence submitted by his attorney). M.N.H.'s testimony, however, would provide significant support for his claim of persecution. M.N.H. testified that he was attacked on account of his political opinion on three separate occasions—all of which occurred while he was a young student. During the first, M.N.H. and other members of his political party were attacked by 15 to 20 individuals belonging to the ruling party. His attackers threatened to kill him and used a stick and belt to hit him on the leg. He testified that the blows he suffered were "pretty bad." During the second incident, M.N.H. and other members of his political party were attacked by 20 to 30 people carrying

4

weapons. M.N.H. testified that he was hurt "very bad[ly]" on his arm by this incident.[2] Finally, M.N.H. testified that he was attacked a third time, by an individual brandishing a wooden stick, and that, after this latest attack, he went into hiding in order to avoid further violence. Further, M.N.H. testified that his brother had suffered numerous similar attacks by members of the ruling party, and that his brother had fled the country twice because of such attacks. Specifically, M.N.H. testified to an incident that occurred when he was 11 years old: his brother was severely attacked by five to six members of the ruling party and was hospitalized; M.N.H. recalled traveling to the hospital to visit his wounded brother. This incident involving M.N.H.'s brother is particularly significant in light of our precedent that "injuries to a family must be considered in an asylum case where the events that form the basis of the past persecution claim were perceived when the petitioner was a child." *Hernandez-Ortiz v. Gonzales*, 496 F.3d 1042, 1046 (9th Cir.2007).

The facts recited in M.N.H.'s testimony—along with his young age at the time he and his family members suffered these attacks—cannot be ignored if he is credible. *See Sagaydak v. Gonzales*, 405 F.3d 1035, 1040 (9th Cir. 2005);

---

[2]Further, we note that the hospital report submitted by M.N.H. does not merely indicate that he suffered "abrasions," but that he was hospitalized for six hours, during which he was x-rayed and administered four injections.

*Hernandez-Ortiz*, 496 F.3d at 1046 (noting that when the agency evaluates an asylum application based on events perceived by the petitioner when he was a child, the agency must "look at the events from [the child's] perspective, [and] measure the degree of . . . injur[y] by [the] impact on children of [that] age.").

We therefore remand for reconsideration of Petitioner's claims. *See Soto-Olarte*, 555 F.3d at 1095. We remand on an open record for both Petitioner and the government to supplement, should they wish.[3]

Given our disposition, we need not address M.N.H.'s alternative contentions, including that the IJ improperly applied a double-standard when considering his credibility and that of the government agents, that he was denied due process when the government did not produce the writing (allegedly in

---

[3]We note that the BIA dismissed M.N.H.'s ineffective assistance claim by holding that any possible prejudice to M.N.H. from the alleged ineffectiveness of his counsel is negated by changed country conditions in Bangladesh. This conclusion was erroneous. M.N.H.'s claim was that his counsel's ineffectiveness affected his ability to present his claim of *past* persecution. If M.N.H. demonstrated past persecution, he would be entitled to a presumption of a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1)(ii). The BIA's opinion does not suggest that the government could have *rebutted* such a presumption, as would have been required to negate any prejudice from counsel's alleged ineffectiveness. Further, the documents the BIA cites to support its finding of changed circumstances do not provide substantial evidence that there has been a "*fundamental* change in country conditions" that has "dispelled any well-founded fear of future persecution," as is required to overcome the presumption of past persecution. *Kamalyan v. Holder*, 620 F.3d 1054, 1057 (9th Cir. 2010) (emphasis added).

6

M.N.H.'s own hand) to which the government agents repeatedly referred, or that counsel was constitutionally ineffective. We note, however, that the IJ and BIA could cure many of these alleged procedural deficiencies on remand.

**PETITION GRANTED.**