NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 17 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| HARDEEP SINGH, | No. 21-70289 |
| Petitioner, | Agency No. A200-993-518 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted December 7, 2021[**]
San Francisco, California

Before: LUCERO,[***] IKUTA, and VANDYKE, Circuit Judges.

Memorandum joined by Judge IKUTA and Judge VANDYKE;
Dissent by Judge LUCERO

Hardeep Singh (Singh) petitions for review of the Board of Immigration

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Carlos F. Lucero, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

Appeals' (BIA) January 28, 2021, affirmance of the Immigration Judge's (IJ) decision denying his claims for asylum, withholding of removal, and request for protection under the Convention Against Torture (CAT). We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition for review.[1]

"Where, as here, the BIA agrees with the IJ's reasoning, we review both decisions." *Garcia-Martinez v. Sessions*, 886 F.3d 1291, 1293 (9th Cir. 2018); *Lai v. Holder*, 773 F.3d 966, 970 (9th Cir. 2014) ("In so doing, we review … the reasons explicitly identified by the BIA, and then examine the reasoning articulated in the IJ's oral decision in support of those reasons.") (citation omitted). "Thus, we refer to the Board and IJ collectively as 'the agency.'" *Medina-Lara v. Holder*, 771 F.3d 1106, 1111 (9th Cir. 2014). Under substantial evidence review, we treat the agency's factual findings as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *Rayamajhi v. Whitaker*, 912 F.3d 1241, 1243 (9th Cir. 2019). Accordingly, in order to reverse the agency's finding, "we must find that the evidence not only *supports* that conclusion, but *compels* it." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992).

Here, the agency concluded that Singh (a Sikh and Mann Party supporter) demonstrated past persecution by police officers in Punjab, creating a presumption of future persecution in support of his asylum application, which the government

---

[1] The parties are familiar with the facts, so we repeat them here only as necessary.

bore the burden to rebut. *Popova v. INS*, 273 F.3d 1251, 1259 (9th Cir. 2001) (citing 8 C.F.R. § 1208.13(b)(1)(i); *Singh v. Ilchert*, 69 F.3d 375, 378 (9th Cir. 1995)). The agency reasonably determined that the government sufficiently rebutted the presumption of future persecution with evidence that Singh could safely and reasonably relocate outside of Punjab (including a 2018 report from the Library of Congress titled "India: Feasibility of Relocation of Sikhs and Members of the Shiromani Akali Dal (Mann) Party," which concludes that relocation is feasible as long as the individual is not a high-profile militant of interest to the central authorities, together with Singh's own testimony that he is not a high-profile member of the Mann Party and has never been linked to any terrorism or extremism in India). Contrary to Singh's assertion on appeal, the agency conducted an individualized assessment and, after weighing the evidence, determined that relocation was safe (given the localized nature of Singh's previous harms) and reasonable (given his financial, educational, and physical means). Although Singh testified that he continues to be a Mann party member and donates to the party, given that Singh expressed fear only of the police targeting him, and did not claim any potential harm by Congress Party members or other local authorities, *cf. Singh v. Whitaker*, 914 F.3d 654, 661 (9th Cir. 2019), the record does not compel a conclusion different than the agency's because substantial evidence supports the finding that Singh could safely and reasonably relocate within India—rendering him ineligible for asylum.

*See INS v. Ventura*, 537 U.S. 12, 18 (2002) (noting that asylum is unavailable if an applicant can safely relocate to another part of his home country) (citing 8 C.F.R. § 208.13(b)(1)(i)).

Because substantial evidence supports the agency's determination that internal relocation is possible and reasonable, the BIA did not err in affirming the IJ's dismissal of Singh's application for withholding of removal based on the agency's relocation conclusion.[2] *See* 8 C.F.R. § 1208.16(b)(2) (relocation is relevant to assessing eligibility for withholding of removal and the likelihood of future persecution); *Sowe v. Mukasey*, 538 F.3d 1281, 1288 (9th Cir. 2008) ("When the government rebuts an applicant's well-founded fear of future persecution, it defeats the applicant's asylum claim, *and* his or her claim for withholding of removal.") (citing *Gonzalez-Hernandez v. Ashcroft*, 336 F.3d 995, 999, 1001 n.5 (9th Cir. 2003) ("Because we hold that [petitioner] and his family do not have a well-founded fear of persecution, it necessarily follows that they do not qualify for withholding of removal.")).

Similarly, the agency did not err in concluding that the same possibility of relocation made Singh ineligible for protection under CAT—which requires that he

---

[2] *Pedro-Mateo v. INS*, 224 F.3d 1147, 1150 (9th Cir. 2000) ("A failure to satisfy the lower standard of proof required to establish eligibility for asylum therefore necessarily results in a failure to demonstrate eligibility for withholding of deportation.") (internal citation omitted).

demonstrate a more likely than not risk of torture if returned to India and, unlike asylum, involves no burden shifting to the government. *See Singh v. Ashcroft*, 351 F.3d 435, 443 (9th Cir. 2003) (citing 8 C.F.R. § 208.16(c)(3) (relocation is relevant to assessing eligibility for CAT relief and the likelihood of future torture)); *Tamang v. Holder*, 598 F.3d 1083, 1095 (9th Cir. 2010) (noting that "evidence of relevant country conditions is extremely important, as is the ability of [petitioner] to safely relocate to another part of his country of origin" for purposes of determining whether it is more likely than not that petitioner will be tortured if returned to his country of origin); *Maldonado v. Lynch*, 786 F.3d 1155, 1163 (9th Cir. 2015) (en banc) ("The regulations governing CAT deferral, unlike the asylum regulation, do not call for any burden shifting."). Because substantial evidence supports the agency's conclusion that Singh could safely and reasonably relocate to avoid future persecution (defeating his asylum and withholding claims), substantial evidence also supports its conclusion that Singh could safely relocate to avoid future torture— defeating his application for CAT relief. *See Aguilar Fermin v. Barr*, 958 F.3d 887, 893 (9th Cir. 2020) (upholding the agency's denial of CAT relief where the record supported the conclusion that the petitioner could safely internally relocate within Mexico).

Accordingly, the petition for review is **DENIED**.

*Hardeep Singh v. Merrick Garland*, 21-70289

**LUCERO**, Senior Circuit Judge, dissenting:

Having established, as found by the immigration judge in this case, that he was jailed and beaten for espousing political and religious views disfavored by local authorities, the burden shifts from Hardeep Singh to the government to prove by a preponderance of the evidence that he could safely relocate away from his home region of Punjab to another part of India. See 8 C.F.R. § 1208.13(b)(3)(ii). Thus, the only question on appeal is whether substantial evidence supports the agency's conclusion that the government has met its burden. See Rayamajhi v. Whitaker, 912 F.3d 1241, 1243 (9th Cir. 2019). Unlike my colleagues, on review of the record before us, I do not find such substantial evidence supporting the agency's conclusion. Therefore, I must respectfully dissent.

My colleagues' deference to the agency conclusion that Singh can safely relocate rests in large part on the substantial evidence standard of review. (Op. at 2-4.) Although I agree that this standard is highly deferential, I cannot agree that the agency conclusion in this case is supported by a reasonable interpretation of the record. See INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (substantial evidence standard requires affirming only agency conclusions that are "supported by reasonable, substantial, and probative evidence on the record considered as a whole" (quotation omitted)). To the contrary, the evidence before us does not take

1

into account all of Singh's individual circumstances. My reading of the record compels a finding that the government has not met its burden to show the feasibility of safe relocation. See id. at 481 n.1; Ali v. Holder, 637 F.3d 1025, 1028-29 (9th Cir. 2011).

The agency theory of safe relocation was predicated on two pieces of evidence: (1) a 2018 Library of Congress report ("the report"); and (2) Singh's brief tenure in India following his arrest. As outlined below, neither piece of evidence demonstrates that Singh can safely relocate. The government has therefore failed to meet its burden to show that safe relocation is more likely than not.

## I

I begin first with the report. As a threshold matter, Library of Congress reports are insufficient on their own to rebut a presumption of future persecution without a specific, individualized application to a particular petitioner. Kamalyan v. Holder, 620 F.3d 1054, 1057 (9th Cir. 2010). Substantively, the report neither establishes the feasibility of safe internal relocation nor addresses Singh's specific situation. The immigration judge read the report as demonstrating the feasibility of internal relocation for Sikhs and supporters of Singh's political party so long as they are not militants and do not have extensive criminal records. However, the report is equivocal at best on this point. For example, it emphasizes that most of

2

its underlying sources "do not specifically address the situation of how members of [Singh's political party] who relocate in fear of persecution are treated." The report goes on to cite two studies from immigration authorities in the United Kingdom concluding in part that "[for Sikhs] fearing ill-treatment/persecution by the state authorities relocation to a different area of the country to escape this threat is not feasible." Indeed, while the report suggests that non-militants and individuals without extensive criminal histories are rarely targeted by Punjab police throughout India, it also cautions that "Punjab police at times wrongly place individuals involved in ordinary political activities on chronic offender lists" that subject targets to detention and persecution throughout India. Because the agency failed to address these caveats in light of Singh's specific circumstances, I do not agree that the report provides substantial evidence supporting the possibility of safe relocation.

Moreover, the report does not neatly capture Singh's particular situation. For one, Singh was arrested after giving a speech that was highly critical of local police and supportive of his political party. The report says nothing about the prospect of safe relocation for vocal critics of local police. Notably, Singh testified that Punjab police have inquired with his family about his whereabouts as recently as 2018, nearly ten years after his original arrest, indicating that he may be a priority target. In addition, the report is largely silent regarding Singh's evidence

3

that local police often share data with other provincial authorities and the central Indian government. The agency dismissed these concerns because the report suggests that Punjab police would require a court order to track and detain Singh in a different state. But the agency did not assess the likelihood that Punjab police could seek or obtain such an order. Rather, it relied on the report's principal finding that supporters of Singh's party are rarely targeted throughout India unless they are militants or have a criminal history. But the report's evidence for that proposition pre-dates Singh's evidence about data sharing between local police departments. The report is silent with respect to tenant registration and other specific methods of data sharing that Singh alleges. Even if the report did address these concerns, the agency ignores evidence that Punjab police have been known to erroneously label individuals as high-value targets. For these reasons, the report does not support the agency's individualized assessment of Singh's circumstances. Id.

## II

Second, the agency relied on Singh's brief tenure in two other Indian states to conclude that he can safely relocate. Shortly after his arrest and beating in Punjab, Singh fled the state and spent approximately fifteen to twenty days hiding in the neighboring state of Haryana. He then left the country, spending approximately ten to fifteen hours in the state of Delhi to travel through a major

4

airport.  I fail to see how such short periods of time, much of which Singh testified

he spent in hiding, can support an inference of safe, permanent relocation.

**III**

Because neither piece of evidence cited by the agency supports the

conclusion that Singh could safely relocate within India, I am compelled to find

that the government has not met its burden to establish that safe relocation is more

likely than not.  I would grant Singh's petition and remand to the agency.