NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 9 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| LUCAS PABLO DOMINGO, | No.    18-70779 |
| Petitioner, | Agency No. A206-636-862 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 6, 2023**
Pasadena, California

Before:  BOGGS,*** IKUTA, and DESAI, Circuit Judges.

Petitioner, Lucas Pablo Domingo, a citizen and national of Guatemala, entered

the United States without inspection as a 17-year-old unaccompanied minor.  Pablo

---

\*        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\*        The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

\*\*\*        The Honorable Danny J. Boggs, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

Domingo sought asylum, withholding of removal, and protection under the Convention Against Torture (CAT) on account of his membership in the particular social group of young men of indigenous descent who have resisted forced gang recruitment. [1] An immigration judge (IJ) denied his application because Pablo Domingo had not shown that his indigenous status was a motivating factor for the gangs' actions, and therefore failed to show that such harm, and his fear of future harm, was inflicted on account of his membership in a particular social group. 8 U.S.C. § 1101(a)(42)(A). The Board of Immigration Appeals (BIA) affirmed the IJ.

Where the BIA issues its own decision, but also relies in part on the IJ's reasoning, we review both decisions. *See Budiono v. Lynch*, 837 F.3d 1042, 1046 (9th Cir. 2016). Factual determinations are reviewed under the substantial-evidence standard. 8 U.S.C. § 1252(b)(4)(B); *Plancarte Sauceda v. Garland*, 23 F.4th 824, 831 (9th Cir. 2022). Under this "highly deferential" standard of review, a court must affirm unless the petitioner shows that "'the evidence not only *supports* . . . but

---

[1]     Since he was an unaccompanied alien child, Pablo Domingo's asylum claim was processed by the U.S. Citizenship and Immigration Services ("USCIS") pursuant to the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008, Pub. L. 110-457, 122 Stat. 5044. USCIS conducted an assessment, found he was not eligible for asylum, and referred his case to the immigration court for adjudication of his asylum application.

*compels*' reversal." *Pedro-Mateo v. INS*, 224 F.3d 1147, 1150 (9th Cir. 2000) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992)).

To qualify for asylum, a petitioner must show past persecution or a well-founded fear of future persecution, based on one of five protected grounds, by either the government or forces the government is unable or unwilling to control. 8 U.S.C. § 1101(a)(42)(A). A nexus must be established between the persecution and the protected ground, and a grant of asylum is appropriate only if the protected ground is "one central reason" for the persecution. 8 U.S.C. § 1158(b)(1)(B)(i).

The IJ made factual errors and the BIA adopted those errors in holding that Pablo Domingo suffered only one violent interaction with a gang attempting to recruit him: one beating from one gang attack. Pablo Domingo suffered from more troubling interactions with the gangs, although only one involved an attack on him personally. When he was only seven years old, his father was severely beaten and died at home from extensive brain trauma. His mother then left Guatemala for the United States. He was not bothered by gangs until two things happened: he reached age 14, and he started attending middle school, which was not located in his village. While walking to school, Pablo Domingo was attacked and beaten by a gang with such severity that he required treatment at a medical clinic, and he stopped going to school because he was afraid. Then his cousin was kidnapped and killed by a gang after his cousin's father, Pablo Domingo's uncle, was unable to pay a ransom. A

18-70779

friend of Pablo Domingo's was also kidnapped and killed. And, "[a]bout one week before he fled Guatemala, he was approached by a gang member who told him that if he came back to Guatemala, they would kidnap him."

All of this happened to Pablo Domingo between the ages of seven and seventeen. "Age can be a critical factor in the adjudication of asylum claims and may bear heavily on the question of whether an applicant was persecuted or whether she holds a well-founded fear of future persecution." *Hernandez-Ortiz v. Gonzales*, 496 F.3d 1042, 1045 (9th Cir. 2007) (internal quotation marks and citation omitted). "[A] child's reaction to injuries to his family is different from an adult's. The child is part of the family, the wound to the family is personal, the trauma apt to be lasting." *Ibid*.

The asylum officer, who initially interviewed him, properly took Pablo Domingo's age and cultural background into account when considering his responses to past trauma and, in so doing, found his testimony to be credible. *See Guidelines for Children's Asylum Claims*, 1998 WL 34336292 (INS). In contrast, the IJ stated that Pablo Domingo had "severe credibility issues" because "after the apparent severe beating . . . he just decided to remain in Guatemala." In assessing asylum cases where the harm occurred to a petitioner or his family when he was a child, the BIA and IJ should recognize and distinguish between a child's psychological response to trauma and that of an adult. *See ibid*.

18-70779

Although the IJ and BIA may have mischaracterized the nature and extent of the harm suffered by Pablo Domingo, even if the harm is correctly characterized, it is not sufficient to compel a finding that Pablo Domingo's harm was different from general gang violence. He failed to establish that one central reason that the gangs attacked him was because he was indigenous. The only evidence in the record relating to indigenous status as a basis for gang attacks is the United States Department of State Country Reports on Human Rights Practices for Guatemala from 2013 through 2016. Those Country Reports indicate that gang members in Guatemala "direct harm against anyone and everyone perceived to have interfered with, or who might present a threat to, their criminal enterprises and territorial power." Thus, while Pablo Domingo could have been attacked on account of being an indigenous young male, nothing compels such a finding. And, since Pablo Domingo did not meet his burden in establishing eligibility for asylum, he is unable to meet the higher burden of proof required under withholding of removal. *See INS v. Stevic*, 467 U.S. 407, 429-30 (1984); *Barajas-Romero v. Lynch*, 846 F.3d 351, 360 (9th Cir. 2017).

The BIA and IJ also did not commit clear error in holding that Pablo Domingo's fear of generalized gang violence and crime in Guatemala is insufficient to support protection under CAT. *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010). He has failed to demonstrate that it is more likely than not that he

5                                                                18-70779

will experience torture if he returns to Guatemala and there is no evidence in the record that gang activity is committed by or at the instigation of the government of Guatemala or anyone acting in an official capacity, or anyone acting with the government's consent or acquiescence. *See Sharma v. Garland*, 9 F.4th 1052, 1067 (9th Cir. 2021); 8 C.F.R. § 1208.18(a)(1).

The petition for review is **DENIED.**