NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

OCT 24 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| INES RODAS DE OSEGUEDA; JOSE ADRIAN OSEGUEDA-RODAS, <br><br> Petitioners, <br><br> v. <br><br> MERRICK B. GARLAND, Attorney General, <br><br> Respondent. | No. 23-794 <br><br> Agency Nos. <br> A209-893-748 <br> A209-893-749 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted October 8, 2024[**]
Las Vegas, Nevada

Before: BEA, CHRISTEN, and BENNETT, Circuit Judges.

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

Petitioners Ines Rodas de Osegueda and her son, Jose Adrian Osegueda Rodas, are natives of El Salvador.[1] They petition for review of the Board of Immigration Appeals' (BIA) final order of removal, in which the BIA affirmed the Immigration Judge's (IJ) decision denying the Petitioners' applications for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). We have jurisdiction under 8 U.S.C. § 1252(a)(1), and we deny Rodas de Osegueda's petition.

"When the BIA conducts its own review of the evidence and law rather than adopting the IJ's decision, our review 'is limited to the BIA's decision, except to the extent that the IJ's opinion is expressly adopted.'" *Shrestha v. Holder*, 590 F.3d 1034, 1039 (9th Cir. 2010) (quoting *Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006)). "We review the BIA's decision on whether a petitioner established eligibility for asylum under the substantial evidence standard." *Boer-Sedano v. Gonzales*, 418 F.3d 1082, 1087 (9th Cir. 2005). "This standard limits reversals of BIA decisions to situations where the Petitioner presented evidence so compelling that no reasonable factfinder could fail to find that Petitioner has not established eligibility for asylum." *Ali v. Ashcroft*, 394 F.3d 780, 784 (9th Cir. 2005) (cleaned up) (quoting *Singh v. INS*, 134 F.3d 962, 966 (9th Cir. 1998)).

---

[1] Rodas de Osegueda is the primary respondent in the proceedings below, and while her son has a separate asylum application, he raises no claims independent of those raised by Rodas de Osegueda.

1. The Agency did not err in concluding that Rodas de Osegueda's past harm fails to rise to the level of persecution. Persecution is "an extreme concept, marked by the infliction of suffering or harm in a way regarded as offensive." *Li v. Ashcroft*, 356 F.3d 1153, 1158 (9th Cir. 2004) (en banc) (cleaned up) (quoting *Fisher v. INS*, 79 F.3d 955, 961 (9th Cir. 1996) (en banc)). Rodas de Osegueda is correct that "death threats alone can constitute persecution." *Navas v. INS*, 217 F.3d 646, 658 (9th Cir. 2000). But, "[a]lthough death threats against an individual may be sufficient to constitute persecution, most threats do not rise to the level of persecution." *Nahrvani v. Gonzales*, 399 F.3d 1148, 1153 (9th Cir. 2005) (citation omitted); *see Hoxha v. Ashcroft*, 319 F.3d 1179, 1182 (9th Cir. 2003) (noting unfulfilled threats are more similar to harassment than persecution); *Lim v. INS*, 224 F.3d 929, 936 (9th Cir. 2000) ("Threats themselves are sometimes hollow and, while uniformly unpleasant, often do not effect significant actual suffering or harm.").

Rodas de Osegueda received two threats. The first occurred when she was running away from the shooting of a neighborhood store owner's son, Werner, by gang members. The gang members ran after her and one, whom she recognized as Carlos Flores, stated, "if you open your mouth, you die." The second threat occurred two weeks later when MS-13 gang members approached Rodas de Osegueda's house and told her that "[t]hey were going to stay inside [her] house because of what [she] had seen." When Rodas de Osegueda told them "no," the gang members

3                                                      23-794

threatened her and her children.[2]  At no point did Rodas de Osegueda suffer any physical harm, nor was there ever any harm to her property.

The cases in which threats have been found to amount to persecution have involved harm more severe than the harm experienced by Rodas de Osegueda.  In the only case to which she points, *Navas v. INS*, 217 F.3d 646 (9th Cir. 2000), the petitioner received death threats after two members of his family were murdered, he was shot at by the murderers, and his mother was beaten.  *Id.* at 658.  The cases underlying *Navas* also contain more severe circumstances.  *See, e.g.*, *Del Carmen Molina v. INS*, 170 F.3d 1247, 1249 (9th Cir. 1999) (finding persecution when guerillas in El Salvador had murdered petitioner's relatives and then threatened petitioner based on her association with those relatives); *Gonzalez v. INS*, 82 F.3d 903, 906, 910–12 (9th Cir. 1996) (finding persecution when petitioner's brother was incarcerated for speaking out against the government, her sister-in-law was beaten in public, her previous husband was imprisoned for helping her son escape the country, she was deprived of a ration card and of the freedom to buy goods, and then she received death threats from the government); *Aguilera-Cota v. INS*, 914 F.2d

---

[2] Rodas de Osegueda's opening brief characterizes this exchange as a one-time occurrence, although "[t]he gang members returned three times."  In her testimony before the IJ, Rodas de Osegueda stated, "This happened about two or three times more."  It is unclear whether she meant the gang members approached her house two or three times more or if they threatened her two or three times more.  In any event, for the reasons discussed below, this does not change our conclusion.

1375, 1378, 1384 (9th Cir. 1990) (finding persecution when petitioner fled El Salvador after receiving death threats after his cousin was murdered, his niece was wounded by bullets, his house had been ransacked by the military, and he was twice forcibly removed from vehicles, interrogated, and detained by the military).

Other cases finding persecution based in part on threats also involve more severe harm than present here. In *Ruano v. Ashcroft*, 301 F.3d 1155 (9th Cir. 2002), the petitioner had received dozens of death threats over six years, was chased by armed men several times, and was often followed to his home and work. *Id.* at 1160–61. In *Smolniakova v. Gonzales*, 422 F.3d 1037 (9th Cir. 2005), the petitioner was attacked, nearly strangled to death, had her wrists slashed, received multiple death threats, and was subject to persistent antisemitic harassment, including fires set to her mailbox and repeated slashings of her front door. *Id.* at 1041–42, 1050. Here, substantial evidence supports the BIA's determination that the harm Rodas de Osegueda experienced did not rise to the level of persecution.

2. The Agency also did not err in concluding Rodas de Osegueda's proposed social group lacks particularity and social distinction. For a petitioner to establish membership in a particular social group, the group must be (1) composed of members that share an immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question. *Vasquez-Rodriguez v. Garland*, 7 F.4th 888, 897 (9th Cir. 2021) (citing *Matter of M-E-V-G-*, 26 I. & N. Dec. 227,

5                                                                  23-794

237 (BIA 2014)). The petitioner "must show a nexus between her past harms or feared future harm and her statutorily protected characteristics." *Rodriguez-Zuniga v. Garland*, 69 F.4th 1012, 1018 (9th Cir. 2023). Rodas de Osegueda proposed a social group of "witnesses to gang crimes in El Salvador."

In finding a lack of particularity, the IJ noted the term "witnesses" could include individuals who "simply . . . observed somebody's misconduct," or that "perhaps . . . someone must report this conduct to the police sharing personal first-hand knowledge" in order to be a "witness." As the IJ also explained regarding the term "gang crimes," "the prevalence and variety of criminal activity by gangs in El Salvador [means] the term gang crimes is too diffuse to be particular." In *Aguilar-Osorio v. Garland*, 991 F.3d 997 (9th Cir. 2021) (per curiam), *overruled in part by Wilkinson v. Garland*, 601 U.S. 209 (2024), we rejected a similar proposed social group of "witnesses who . . . could testify against gang members based on what they witnessed." *Id.* at 999. We found the proposed social group not cognizable because the group encompassed "anyone in Honduras who is a potential witness to anything that can be characterized as crime committed by a gang member." *Id.* The same is true here.

Further, Rodas de Osegueda's proposed group lacks social distinction. Although she argues that Salvadoran witness protection laws establish that witnesses are treated as a distinct group in El Salvador, the Salvadoran witness protection laws

do not "extend to all witnesses to gang crimes irrespective of what actions they take." Instead, they protect only witnesses who testify, and Rodas de Osegueda did not testify against any of the gang members or otherwise assist the police.

3. The BIA did not err in finding Rodas de Osegueda failed to show the Salvadoran government was unwilling or unable to protect her from harm. Rodas de Osegueda failed to establish the Salvadoran authorities were unable or unwilling to protect her from gangs. She admits she never contacted the police or informed them of the crimes she had witnessed, despite the fact that the police investigated Werner's death and searched Rodas de Osegueda's home several times to try to gather evidence concerning the gang and their criminal activities. The police eventually named Flores as a suspect in Werner's death and killed him when attempting to apprehend him. Rodas de Osegueda herself admits that she believed that, if she reported the evidence she knew to the police, it would have led to arrests.

**PETITION DENIED.**