**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FRANCISCA VILLEGAS SANCHEZ,
*Petitioner*,

v.

MERRICK GARLAND, Attorney
General,
*Respondent.*

No. 16-73745

Agency No.
A208-595-370

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted January 12, 2021
San Francisco, California

Filed March 11, 2021

Before: Jay S. Bybee and Ryan D. Nelson, Circuit Judges,
and Robert H. Whaley,[*] District Judge.

Opinion by Judge R. Nelson

---

[*] The Honorable Robert H. Whaley, United States District Judge for the Eastern District of Washington, sitting by designation.

**SUMMARY**[**]

**Immigration**

Denying Francisca Villegas Sanchez's petition for review of the Board of Immigration Appeals' decision upholding an immigration judge's denial of her applications for asylum and withholding of removal, the panel held that substantial evidence supported the Board's determination that she failed to establish past harm rising to the level of persecution, and that her proposed social groups were not cognizable.

The panel held that Villegas Sanchez did not establish past persecution, where her alleged persecutor issued vague threats, confronted her several times over a period of weeks, did not perform any acts of violence, and never followed through on any of his threats. The panel explained that, though condemnable, the unfulfilled threats were not so overwhelming to necessarily constitute persecution.

The panel held that substantial evidence supported the Board's determination that petitioner's proposed social groups comprised of "Salvadoran women who refuse to be girlfriends of MS gang members" and "Salvadoran women who refuse to be victims of violent sexual predation of gang members" lacked social distinction. Noting that the government did not contest that the proposed groups satisfy the first social distinction requirement of sharing "a common immutable characteristic," the panel wrote that women either

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

cannot change, or should not be required to change their gender because it is fundamental to their identity, and women should not be required to change their choice not to submit to gang members and enter into a sexual relationship in order to avoid persecution. The panel concluded that Villegas Sanchez failed to present sufficient evidence to compel the finding that society in general perceives, considers, or recognizes persons sharing her proposed particular characteristics to be a group. Explaining that the social distinction inquiry encompasses principles that will ordinarily demand some type of corroborative, objective evidence other than an applicant's testimony, the panel concluded that the evidence Villegas Sanchez presented, including country report evidence stating generally that women in El Salvador can be ill-treated, and her aunt's suggestion that she leave El Salvador, did not compel the conclusion that Salvadoran society perceives women similarly situated to her as a group. The panel also rejected Villegas Sanchez's assertion that the Board did not perform the required evidence-based inquiry as to whether the relevant society recognized her proposed groups.

## COUNSEL

Teresa A. Reed Dippo (argued), Munger Tolles & Olson LLP, San Francisco, California, for Petitioner.

Kathryn M. McKinney (argued), Attorney; Stephen J. Flynn, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

R. NELSON, Circuit Judge:

Francisca Villegas Sanchez petitions for review of the Board of Immigration Appeals' ("BIA") decision upholding an immigration judge's ("IJ") denial of her applications for asylum and withholding of removal. Villegas Sanchez argues she suffered past persecution and has a well-founded fear of future persecution based on her membership in the proposed particular social groups of "Salvadoran women who refuse to be girlfriends of MS gang members" and "Salvadoran women who refuse to be victims of violent sexual predation of gang members." Because substantial evidence supports the BIA's dismissal of her past persecution claim and its conclusion that her proposed particular social groups are not distinct in Salvadoran society, we deny the petition.

I

Villegas Sanchez, a native and citizen of El Salvador, attempted to enter the United States on October 24, 2015. In secondary inspection, Villegas Sanchez expressed a credible fear of returning to El Salvador and her case was referred to an IJ. Villegas Sanchez conceded her inadmissibility but applied for asylum, withholding of removal, and Convention Against Torture ("CAT") relief. She claimed that, if deported, she would face persecution and torture at the hands of a man, "Cabezon," whose romantic advances she refused.

Villegas Sanchez testified at her IJ removal hearing that after 16 years of being neighbors with Cabezon, her difficulties with him began when he asked her on a date

several times in August 2015.[1]  After she refused, Cabezon "got mad."  In at least one phone conversation overheard by Villegas Sanchez, Cabezon said: "There is a gal. What are we going to do with her?"  Villegas Sanchez believed Cabezon was a member of the MS-13 street gang because of his tattoos, the way he dressed, and the people he associated with.

Villegas Sanchez testified that Cabezon threatened her three times over a period of several weeks.  Cabezon told Villegas Sanchez that he would send her "to the tomb" if she did not date him; sent her two text messages with images of caskets and asking whether she wanted black or red roses; and ultimately told her he was not "kidding around" and gave her a two-day deadline to respond.  Villegas Sanchez did not report Cabezon's behavior to Salvadoran police because she did not think they would help.  Villegas Sanchez left El Salvador two days later, on September 9, 2015, to stay with her mother in California.

Villegas Sanchez supplemented her testimony with several reports, including the 2014 U.S. Department of State Human Rights Report for El Salvador, which detailed the country's handling of violence against women.  When Villegas Sanchez told her aunt living in New York about the threats, her aunt advised, "well, the only way was to leave El Salvador."

Relying on this evidence, Villegas Sanchez asserted before the IJ that she experienced past persecution and has a well-founded fear of future persecution based on her membership in one of three proposed particular social

---

[1] The IJ found Villegas Sanchez to be a credible witness and the BIA did not find the IJ's finding to be clearly erroneous.

groups: "Salvadoran women who are unable to leave a domestic relationship;" "Salvadoran women who refuse to be girlfriends of MS gang members;"[2] and "Salvadoran women who refuse to be victims of violent sexual predation of gang members."

After recounting the evidence presented, the IJ concluded that Cabezon's three threats were insufficient to constitute past persecution. Villegas Sanchez had not been threatened by any other gang members nor was she ever physically harmed, and Cabezon had not taken any other action in 16 years that would constitute past persecution.[3] The IJ also found that Villegas Sanchez did not meet her burden of showing her proposed particular social groups were socially distinct in El Salvador.

Villegas Sanchez appealed the IJ's decision to the BIA, which denied relief. The BIA agreed with the IJ that the threats did not rise to the level of past persecution. It also agreed that Villegas Sanchez had not shown she was a member of a socially distinct particular social group, precluding her claim that she had a well-founded fear of future persecution.[4] The BIA held she was thus ineligible

---

[2] According to country conditions evidence in the record, "MS" or "MS-13" refers to Mara Salvatrucha, an international criminal gang, that has proliferated in El Salvador.

[3] Villegas Sanchez also argues the Salvadoran government is unable or unwilling to control Cabezon. The IJ found Villegas Sanchez had not demonstrated that the Salvadoran government was "unwilling or unable" to control Cabezon, but because the BIA explicitly declined to rely on this, it is not properly before us. *Diaz-Reynoso v. Barr*, 968 F.3d 1070, 1075 (9th Cir. 2020).

[4] The BIA noted Villegas Sanchez was not in a domestic relationship with Cabezon, precluding her membership in the particular social group

for asylum and withholding of removal.[5]  The BIA also held that the IJ did not clearly err in concluding that Villegas Sanchez's "experiences and the general assertion that there is gang violence in El Salvador" were insufficient to obtain CAT relief.  Villegas Sanchez petitioned for review only of the BIA's denial of her asylum and withholding of removal claims.

## II

"We review only the BIA's opinion, except to the extent that it expressly adopted portions of the IJ's decision." *Velasquez-Gaspar v. Barr*, 976 F.3d 1062, 1064 (9th Cir. 2020) (quoting *Rayamajhi v. Whitaker*, 912 F.3d 1241, 1243 (9th Cir. 2019)).  "Our review is limited to those grounds explicitly relied upon by the [BIA]."  *Diaz-Reynoso*, 968 F.3d at 1075 (alteration in original) (citation omitted).

We review agency factual findings for substantial evidence.  *Zumel v. Lynch*, 803 F.3d 463, 471 (9th Cir. 2015).  Under "the substantial-evidence standard[,] [t]he agency's 'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'"  *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (quoting 8 U.S.C. § 1252(b)(4)(B)).  Evidence in the record compelling a contrary conclusion must be demonstrated "with the degree of clarity necessary to permit

---

she had proposed of "Salvadoran women who are unable to leave a domestic relationship."  At oral argument, Villegas Sanchez's counsel conceded this BIA finding was correct.

[5] The IJ also found Villegas Sanchez had a subjective fear of being harmed but her fear was not objectively well-founded.  Because the BIA did not mention this as a ground for denial, we do not review it.  *Diaz-Reynoso*, 968 F.3d at 1075.

reversal . . . ." *See INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992).

## III

To be eligible for asylum, Villegas Sanchez must show she is "unable or unwilling" to return to El Salvador due to past "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Baghdasaryan v. Holder*, 592 F.3d 1018, 1022–23 (9th Cir. 2010) (quoting 8 U.S.C. § 1101(a)(42)(A)).   Villegas Sanchez "has the burden of establishing that (1) h[er] treatment rises to the level of persecution; (2) the persecution was on account of one or more protected grounds; and (3) the persecution was committed by the government, or by forces that the government was unable or unwilling to control." *Id.* at 1023 (citation omitted); *see also* 8 U.S.C. § 1158(b)(1)(B); 8 C.F.R. §§ 1208.13(a), (b)(1).

## A

Substantial evidence supports the BIA's determination, including its specific reliance on the IJ's findings that the threats here do not amount to past persecution.  The BIA agreed with the IJ that the threats, though "understandably frightening," did not rise to the level of past persecution because "unfulfilled threats generally 'constitute harassment rather than persecution,'" citing our holdings in *Hoxha v. Ashcroft*, 319 F.3d 1179, 1182 (9th Cir. 2003), and *Lim v. INS*, 224 F.3d 929, 936 (9th Cir. 2000).

Substantial evidence supports the BIA's decision. Villegas Sanchez's neighbor, Cabezon, issued vague threats, confronted her several times over a period of weeks, did not perform any acts of violence, and never followed through on

any of his threats. Though condemnable, these threats were not "so overwhelming so as to necessarily constitute persecution." *Prasad v. INS*, 47 F.3d 336, 339 (9th Cir. 1995); *see also Wakkary v. Holder*, 558 F.3d 1049, 1059 (9th Cir. 2009) ("Persecution is an extreme concept that does not include every sort of treatment our society regards as offensive." (internal quotation omitted)). Cabezon's interactions likely induced fear, but they do not constitute the "extreme" case where threats alone compel a finding of past persecution. *See Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019) (threats by phone and in person, without acts of violence, did not compel finding past persecution).

Villegas Sanchez asserts that a general culture of violence against women in her hometown and Cabezon's membership in a violent street gang made his threats menacing enough to constitute past persecution. Villegas Sanchez relies on her vague recollection that an unidentified woman in her hometown disappeared, which she ascribed to gang activity without supporting evidence. But the BIA (adopting the IJ's findings) found Cabezon's threats did not represent MS-13 and no "general threat from the gang as a whole." Villegas Sanchez was friendly with her neighbor Cabezon for 16 years and testified she never felt threatened until he asked her out.

Moreover, despite Villegas Sanchez painting a picture of near-inevitable gang violence against women, she has "never been bothered by gangs" or "physically harmed" in El Salvador. She expressly disclaimed any fear upon return, other than of Cabezon specifically. Mere threats, without more, do not necessarily compel a finding of past persecution. *See Lim*, 224 F.3d at 932 (dealing with unfulfilled threats from a militant dissident group with a

history of violent interactions with petitioner). In *Lim*, we held that unfulfilled threats were indicative of future persecution rather than past persecution itself. *Id.* Here, substantial evidence supports the BIA's determination that Cabezon's unfulfilled threats were not so extreme as to constitute past persecution.

B

Villegas Sanchez also asserts a well-founded fear of future persecution based on her membership in two groups:[6] "Salvadoran women who refuse to be girlfriends of MS gang members" and "Salvadoran women who refuse to be victims of violent sexual predation of gang members."[7] The BIA noted that the record does not "reflect that Salvadoran society perceives women similarly situated to her as a group." Thus, the BIA rejected Villegas Sanchez's claim of future persecution, agreeing with the IJ's finding that she did not establish her groups as "socially distinct on this record." Substantial evidence supports the BIA's conclusion that Villegas Sanchez has not met her burden of showing membership in socially distinct groups. *See Diaz-Reynoso*,

---

[6] Because Villegas Sanchez abandons her proposed group dealing with domestic relationships, we do not address *Matter of A-R-C-G-*, 26 I. & N. Dec. 388 (BIA 2014), which the BIA cited but did not rely upon, or *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018), which overruled *Matter of A-R-C-G-*. Villegas Sanchez concedes *Matter of A-B-* would not affect her conclusions but argues in Reply the BIA should address *Matter of A-B-* on remand. This new rationale for remand is unsupported by authority and likely forfeited. *See Martinez-Serrano v. INS*, 94 F.3d 1256, 1259 (9th Cir. 1996).

[7] In Reply, Villegas Sanchez reframes her groups as a new group of "women who resist gang members' sexual advances." Her new formulation would not change the analysis, if not forfeited. *See Martinez-Serrano*, 94 F.3d at 1259.

968 F.3d at 1084.  Villegas Sanchez's argument that the BIA conducted an inadequate inquiry into the record regarding social distinction is unavailing.

1

"We have endorsed two companion Board decisions that clarified the elements underlying the particular social group analysis: *Matter of M-E-V-G-*, 26 I. & N. Dec. 227 (BIA 2014) and *Matter of W-G-R-*, 26 I. & N. Dec. 208 (BIA 2014)."  *Nguyen v. Barr*, 983 F.3d 1099, 1103 (9th Cir. 2020).  "The Board has . . . interpreted the phrase 'particular social group' to refer to a group that is '(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question.'"  *Akosung v. Barr*, 970 F.3d 1095, 1103 (9th Cir. 2020) (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. at 237).[8]

Social distinction requires "those with a common immutable characteristic [to be] set apart, or distinct, from other persons within the society in some significant way."  *Matter of M-E-V-G-*, 26 I. & N. Dec. at 238.  Specifically, social distinction requires "evidence showing that society in general perceives, considers, or recognizes persons sharing

---

[8] The IJ found the groups were "defined with particularity" and the BIA did not overturn that finding.  *See Diaz-Reynoso*, 968 F.3d at 1075. Villegas Sanchez argues for remand to explain how her groups were particular but not socially distinct.  But "[t]he 'social distinction' and 'particularity' requirements each emphasize a different aspect of a particular social group" and overlap only "because the overall definition is applied in the fact-specific context of an applicant's claim for relief." *Matter of M-E-V-G-*, 26 I. & N. Dec. at 241.  A finding of particularity and a finding that a proposed particular social group lacks social distinction "each serves a separate purpose."  *Id.*

the particular characteristic to be a group." *Matter of W-G-R-*, 26 I. & N. Dec. at 217. "[T]he social group must exist independently of the fact of persecution" because "the persecutors' perception is not itself enough to make a group socially distinct." *Matter of M-E-V-G-*, 26 I. & N. Dec. at 236 n.11, 242; *see also Conde Quevedo v. Barr*, 947 F.3d 1238, 1242 (9th Cir. 2020). However, "persecutory action taken toward a group can be relevant to that group's . . . social distinction" because "persecution itself 'may be the catalyst that causes' a society to distinguish a group in a meaningful way and consider it distinct." *Diaz-Reynoso*, 968 F.3d at 1083, 1090 (quoting *Matter of M-E-V-G-*, 26 I. & N. Dec. at 243).

"The particular social group analysis does not occur in isolation, but rather in the context of the society out of which the claim for asylum arises." *Matter of M-E-V-G-*, 26 I. & N. Dec. at 238. And though "'various factors, such as immutability, cohesiveness, homogeneity, and visibility, are helpful in various contexts,' . . . we should also follow the 'traditional common law approach, looking at hypothetical cases and commonalities in cases that go one way or the other.'" *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1151 (9th Cir. 2010) (quoting *Donchev v. Mukasey,* 553 F.3d 1206, 1220 (9th Cir. 2009)). However, "the agency must make a case-by-case determination as to whether the group is recognized by the particular society in question." *Pirir-Boc v. Holder*, 750 F.3d 1077, 1084 (9th Cir. 2014).

"The BIA's conclusion regarding social distinction—whether there is evidence that a specific society recognizes a social group—is a question of fact that we review for substantial evidence." *Conde Quevedo*, 947 F.3d at 1242 (citations omitted).

2

The government does not contest that these proposed groups of "Salvadoran women who refuse to be girlfriends of MS gang members" and "Salvadoran women who refuse to be victims of violent sexual predation of gang members" satisfy the first social distinction requirement of sharing "a common immutable characteristic." *See Matter of M-E-V-G-*, 26 I. & N. Dec. at 238. Women "either cannot change, or should not be required to change" their gender "because it is fundamental to their . . . identit[y] . . . ." *See Matter of W-G-R-*, 26 I. & N. Dec. at 210 (quotation omitted). And women "should not be required to change" their choice not to submit to gang members and enter into a sexual relationship "in order to avoid persecution." *See id.* at 213; *see also Perdomo v. Holder*, 611 F.3d 662, 667 (9th Cir. 2010) (noting women in certain vulnerable circumstances can constitute a particular social group).

But Villegas Sanchez has not presented sufficient evidence to compel finding "that society in general perceives, considers, or recognizes persons sharing the particular characteristic to be a group." *Matter of W-G-R-*, 26 I. & N. Dec. at 217. Importantly, "the social distinction inquiry encompasses principles that will ordinarily demand some type of corroborative, objective evidence" other than Villegas Sanchez's testimony. *Diaz-Torres v. Barr*, 963 F.3d 976, 982 (9th Cir. 2020).

Villegas Sanchez argues mainly that her proposed groups are socially distinct because violence against women, including domestic violence, is a widespread problem in Salvadoran society. But the report cited does not address how Salvadoran society perceives "women who refuse to be girlfriends of MS gang members" or "women who refuse to be victims of violent sexual predation of gang members"

distinctly. Rather, the report states generally that women in El Salvador can be ill-treated. These generalized statistics do not compel a finding that these proposed groups are socially distinct. *See Diaz-Torres*, 963 F.3d at 979 (holding no particular social group where documentary evidence did not show "society views either of the[] groups as distinct"); *Conde Quevedo*, 947 F.3d at 1243 (same); *Reyes v. Lynch*, 842 F.3d 1125, 1138 (9th Cir. 2016) (same).[9]

Villegas Sanchez also cites the fact that her aunt, living in New York, urged her to leave El Salvador. She does not explain how her relative living in New York represents the views of society in El Salvador. And her aunt's response—"well, the only way was to leave El Salvador"—says nothing about how Salvadoran society, rather than Cabezon specifically, might view Villegas Sanchez distinctly. The BIA considered all the evidence and concluded the record does not "reflect that Salvadoran society perceives women similarly situated to her as a group." The evidence does not compel a contrary conclusion. Villegas Sanchez's proposed groups are not "set apart, or distinct, from other persons within the society in some significant way." *Matter of M-E-V-G-*, 26 I. & N. Dec. at 238.

---

[9] Villegas Sanchez also argues that Cabezon asking her to be his girlfriend could be relevant to social distinction. But even if his advances could "catalyze" society to perceive her differently, she again has no evidence that Salvadoran "society in general," as opposed to Cabezon alone, "perceives, considers, or recognizes" her proposed groups distinctly. *See Matter of W-G-R-*, 26 I. & N. Dec. at 217; *see also Cordoba v. Barr*, 962 F.3d 479, 483 (9th Cir. 2020) (denying petition because petitioner did not link his alleged persecutor's views to "society generally").

3

Villegas Sanchez asserts that the BIA "did not perform the required evidence-based inquiry as to whether the relevant society recognizes" her proposed groups, quoting *Pirir-Boc*, 750 F.3d at 1084.  Thus, according to Villegas Sanchez, the BIA's decision "lacks an adequate statement of the legal or factual bases for resolving the 'social distinctness' issue."  This argument is unconvincing.

*Pirir-Boc* requires only that the BIA does a case-specific analysis and not reject a claim solely based on similarities to other cases.  *See* 750 F.3d at 1084.  The BIA did this here.  The BIA noted that "the record does not reflect . . . that Salvadoran society perceives women similarly situated to her as a group," agreeing with the IJ's similar determination that "the evidence does not show that they are socially distinct within the society in question."   And the BIA demonstrated it reviewed the evidence cited by Villegas Sanchez, noting her "experiences and the general assertion that there is gang violence in El Salvador" later in its decision.  Moreover, the BIA explicitly "defer[red] to the Immigration Judge's factual findings," which comprehensively recounted the relevant facts, as detailed above.

All indications show that the BIA reviewed the full record, including the portions cited below and before this court, and merely found it lacking.  *Cf. Cole v. Holder*, 659 F.3d 762, 771–72 (9th Cir. 2011) (noting indications that the agency did not review the record "include misstating the record and failing to mention highly probative or potentially dispositive evidence").  The BIA's "statement of its reasons for denying the petitioner relief [is] adequate for us to conduct our review."  *Ghaly v. INS*, 58 F.3d 1425, 1430 (9th Cir. 1995) (citing *Castillo v. INS*, 951 F.2d 1117, 1121

(9th Cir. 1991)).  It "state[d] with sufficient particularity and clarity the reasons for denial of asylum."  *Castillo*, 951 F.2d at 1121 (citations omitted).

Essentially, Villegas Sanchez asks us to remand because the BIA did not meticulously repeat verbatim every piece of evidence already listed in the IJ's findings.  But the agency "need not discuss each piece of evidence submitted," *Gonzalez-Caraveo v. Sessions*, 882 F.3d 885, 894 (9th Cir. 2018), even when reviewing CAT claims where regulations "explicitly require . . . consider[ing] 'all evidence relevant to the possibility of future torture,'" *Aguilar-Ramos v. Holder*, 594 F.3d 701, 705 n.6 (9th Cir. 2010) (quoting 8 C.F.R. § 208.16(c)(3)).  Likewise, the BIA need not discuss each piece of evidence in asylum and withholding of removal claims, especially in a case like this one where it agrees with and adopts the IJ's factual findings.  Adopting Villegas Sanchez's argument would impermissibly "impose unnecessarily burdensome or technical requirements on the Board."  *See Ghaly*, 58 F.3d at 1430.

The BIA did not ignore (nor did the IJ's analysis as adopted by the BIA) any of Villegas Sanchez's arguments and the complete record supports that the BIA and IJ fully reviewed the evidence.  *See Montes-Lopez v. Gonzales*, 486 F.3d 1163, 1165 (9th Cir. 2007).  We agree with the Second Circuit, which "do[es] not require . . . that an IJ expressly parse or refute on the record each and every one of a petitioner's purported explanations . . . ."  *Xiao Ji Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 159 n.13 (2d Cir. 2006) (citation omitted).

IV

Withholding requires that "life or freedom . . . be threatened for a reason" tied to protected grounds, defined in

the same way as for asylum. *Barajas-Romero v. Lynch*, 846 F.3d 351, 358–59 (9th Cir. 2017) (quoting 8 U.S.C. § 1231(b)(3)(C)) (emphasis omitted); *Rios v. Lynch*, 807 F.3d 1123, 1124 (9th Cir. 2015). "A failure to satisfy the lower standard of proof required to establish eligibility for asylum therefore necessarily results in a failure to demonstrate eligibility for withholding of deportation." *Pedro-Mateo v. INS*, 224 F.3d 1147, 1150 (9th Cir. 2000) (citing *Ghaly*, 58 F.3d at 1429). Because Villegas Sanchez is ineligible for asylum, as her proposed particular social groups are not socially distinct, she is ineligible for withholding of removal. *See Zehatye v. Gonzales*, 453 F.3d 1182, 1190 (9th Cir. 2006).

**PETITION FOR REVIEW DENIED.**