NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

MAR 26 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

BAOGUO LIU,

Petitioner,

v.

MERRICK B. GARLAND, Attorney
General,

Respondent.

No.    16-71202

Agency No. A088-482-859

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
January 10, 2024
Pasadena, California

Before:  CALLAHAN and BENNETT, Circuit Judges, and KATZMANN,[**] Judge.
Concurrence by Judge KATZMANN.

Petitioner Baoguo Liu ("Liu") is a fifty-eight-year-old native and citizen of

the People's Republic of China ("China").  He petitions for review of a decision by

the Board of Immigration Appeals ("BIA") upholding an Immigration Judge's

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Gary S. Katzmann, Judge for the United States Court of International Trade, sitting by designation.

("IJ") denial of his applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").[1] 8 U.S.C. §§ 1158(b)(l)(A), 1231(b)(3)(A); 8 C.F.R. §§ 1208.16(c), 1208.18. In his petition, Liu challenges the sole ground for the BIA's decision as to all three forms of relief sought: that Liu's testimony at his removal hearing was not credible. We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition.

Liu testified at his removal hearing that before he entered the United States, he was detained and abused by police officers in China. Liu further asserted that he suffered this mistreatment because he had physically resisted the Chinese authorities' ultimately successful efforts to force Liu's pregnant then-wife to have an abortion pursuant to China's One Child Policy. (Liu and that woman, who are now divorced, already had one daughter at the time of the pregnancy). Liu also testified that his Chinese employer fired him soon after the arrest.

The IJ and the BIA identified numerous discrepancies between Liu's testimony and the documentary record. The record shows that Liu repeatedly listed his Chinese address, in forms as current as his written U.S. asylum application, as a residence that Liu testified was demolished in 1998. Liu's Chinese personal ID—which was issued after the purported demolition date—also reflects Liu's continued residence at the purportedly demolished address. A

---

[1] Liu has conceded removability.

separate household registration document lists only Liu at this address (as the "household head") and makes no mention of Liu's cohabitation with his wife and daughter.

The record also includes a copy of the Chinese divorce decree obtained by Liu's ex-wife: this document includes statements by the ex-wife that the couple separated soon after the birth of their daughter, nearly eight years before the purported incidents that form the basis of Liu's claims for relief from removal.

The IJ also identified a conflict within Liu's testimony as to the exact date of his April 2007 termination from his job in China. Per the IJ, Liu's testimony that he received his termination notice on April 22, 2007, "two days . . . after his arrest and release," was inconsistent with his testimony that he was arrested on April 16, 2007. "Two days" after Liu's arrest, according to the IJ, could be no later than April 19, 2007.

We review adverse credibility determinations for substantial evidence. *Mukulumbutu v. Barr*, 977 F.3d 924, 925 (9th Cir. 2020). The scope of this review is limited to "the reasons explicitly identified by the BIA, and . . . the reasoning articulated in the IJ's . . . decision in support of those reasons." *Lai v. Holder*, 773 F.3d 966, 970 (9th Cir. 2014). "We review the BIA's findings of fact, including credibility findings, for substantial evidence and must uphold the BIA's finding

unless the evidence compels a contrary result." *Almaghzar v. Gonzales*, 457 F.3d 915, 920 (9th Cir. 2006) (internal quotation marks omitted).

An adverse credibility determination that is based on inconsistencies between testimony and record evidence is supported by substantial evidence only if the cited inconsistencies are not "trivial" and have "some bearing on the petitioner's veracity." *Ren v. Holder*, 648 F.3d 1079, 1086 (9th Cir. 2011). Further, "[i]f the IJ relies upon purported inconsistencies to make an adverse credibility determination, the IJ must provide the noncitizen with an opportunity to explain each inconsistency." *Barseghyan v. Garland*, 39 F.4th 1138, 1143 (9th Cir. 2022); *see also Soto-Olarte v. Holder*, 555 F.3d 1089, 1092–94 (9th Cir. 2009) (explaining that remand is the appropriate remedy where an adverse credibility determination rests on apparent inconsistencies that a respondent lacked adequate opportunities to address during his hearing). Put otherwise, "an IJ cannot base an adverse credibility determination on a contradiction that the alien could reconcile if given a chance to do so." *Rizk v. Holder*, 629 F.3d 1083, 1088 (9th Cir. 2011), *overruled in part on other grounds by Alam v. Garland*, 11 F.4th 1133, 1135 (9th Cir. 2021) (en banc). Further, if a respondent's explanation for an inconsistency is "reasonable and plausible," then the agency "must provide a specific and cogent reason for rejecting it." *Munyuh v. Garland*, 11 F.4th 750, 758 (9th Cir. 2021).

Here, each of these tests for substantial evidence is satisfied as to the primary discrepancies at issue: Liu's Chinese home address and the status of his relationship with his then-wife at the time of his asserted detention. First, these discrepancies are not trivial; they are central to Liu's asylum claim. *See Ren*, 648 F.3d at 1086. The testimony-contradicting record evidence cited by the IJ and the BIA tends to establish that Liu lived apart from his wife and had no contact with her at the time of Liu's purported acts of resistance to the purported forced abortion. If this is so, then Liu could not have resisted China's coercive population control policies in the manner he claimed. Liu's asylum claim thus hinges entirely on whether his testimony can be reconciled with the record evidence that apparently contradicts it.

Nor did Liu lack chances to explain the discrepancies that the IJ identified at the removal hearing. Regarding Liu's listing of his old address on his asylum application, the IJ asked, "[j]ust so I know, sir, why would you on your asylum application put an old address, if you moved? I don't understand that?". Liu responded, "[y]eah, I had never done this before. I have no experience in filling this type of form. That's my explanation." The IJ pressed further: "Well, why would you perpetuate that mistake, sir? When you look at the [I-130 form] . . . and you have the same address? The one that you didn't live at in almost 17 years ago. Why would you have done it again?".

Liu and the IJ also had the following exchange on the subject of Liu's

Chinese identification card:

> **IJ**: Okay.  The reason that I say this, sir, and ask you these questions is I need to understand the evidence that you gave me.  And I want to give you every opportunity to explain your testimony in light of the documents you gave me.  Because the ID you gave me is dated in 2002 [and] says you were living at 45 Xingli Huajaichang.  Well, you told me today you moved in '98, that it was demolished . . . So I can't understand this discrepancy, sir.  So I want to give you a chance to explain it to me?
>
> **Liu**: I lost my original ID card.  This ID card actually is a replacement.
>
> **IJ**: That's your explanation?
>
> **Liu**: Yes.

The IJ again pressed Liu for further explanation later on in the hearing, this time

during an exchange on the subject of Liu's ex-wife's statements in her divorce

decree:

> **IJ**: I need to understand one thing, sir. After the tragic abortion, electrocution and you got out of jail and you went home, how was married life then?
>
> **Liu**: We were still together and lived normally.
>
> **IJ**: And, and you lived with her until you left the People's Republic of China, is that correct?
>
> **Liu**: Yes.
>
> **IJ**: So why would she get a divorce, whether she lied about the facts, why would she get this divorce before you left, if you're living together, you've just experienced this horrible incident, why would she get divorced on July 6, 2007, the document you gave me?

**Liu**: I don't know why, probably she did not love me anymore.

These exchanges constituted opportunities for Liu to elaborate on how his testimony could be reconciled with the record evidence. But Liu replied with no explanations of any substance, even when repeatedly invited by the IJ to elaborate on his testimony.[2]

This case differs in this regard from *Soto-Olarte*, where the court held that inconsistencies were improper bases for an adverse credibility determination because the petitioner "was never asked about any of [the cited] inconsistencies at his hearing before the IJ," and because "good explanations" for them might speculatively exist. 555 F.3d at 1092; *see also Guo v. Ashcroft*, 361 F.3d 1194, 1200 (9th Cir. 2004) ("[U]nclear testimony may not serve as substantial evidence for an adverse credibility finding when an applicant is not given the chance to attempt to clarify his or her testimony."). While it is possible to speculate about the explanations that Liu could have offered for his seemingly inconsistent testimony, the transcript of the removal hearing demonstrates that Liu had—and passed up—ample opportunities to provide such explanations.

By contrast, one of the discrepancies at issue in this case does not constitute substantial evidence supporting the adverse credibility determination. The IJ and

---

[2] Liu was represented by counsel at the hearing. Although he participated in the hearing through a human Mandarin–English translator, he does not contest the translation's accuracy.

the BIA both noted that while Liu testified that he received a termination letter from his employer two days after his April 16, 2007 arrest, this does not exactly match his separate testimony that he received the letter on April 22 of that year. But the IJ made no mention of this discrepancy during the hearing, instead asking Liu only why the termination letter was dated April 21 when Liu testified that he received it on April 22. Liu accordingly could not have known that he needed to explain the separate discrepancy about both dates being more than two days after his April 16 arrest. Because Liu lacked this opportunity, the discrepancy cannot serve as substantial evidence supporting an adverse credibility determination. *See Soto-Olarte*, 555 F.3d at 1092.

We are satisfied, however, that the "totality of the circumstances and all relevant factors" do not warrant remand in this case. *Alam*, 11 F.4th at 1137 (cleaned up) (quoting 8 U.S.C. § 1158(b)(1)(B)(iii)). This case involves a striking number of independent discrepancies between the petitioner's testimony and the record. The BIA cited these "multiple, material inconsistencies between the respondent's testimony and the documentary evidence he provided" and noted that "it remains uncertain whether the events central to the respondent's asylum claim transpired." These uncertainties, the BIA explained, pertained to whether Liu "lived with or had any relationship with his spouse when he attempted to prevent authorities from performing a forced abortion on her in 2007, and whether his wife

was pregnant with a second child, in violation of China's population control laws." We discern no hint from this explanation that the BIA's adverse credibility determination rests on the termination date inconsistency for any significant support. The IJ also indicated that this inconsistency was inessential to his credibility determination, citing it as "just another example of the presentation that this respondent has done in a cavalier and dishonest manner." Therefore, even though "[t]here is no bright-line rule under which some number of inconsistencies requires sustaining or rejecting an adverse credibility determination," we conclude that the residency- and divorce decree–related inconsistencies are enough to sustain the determination at issue here. *Alam*, 11 F.4th at 1137. This is not a case where "several rejected findings . . . all but gut the BIA's adverse credibility determination." *Kumar v. Garland*, 18 F.4th 1148, 1156 (9th Cir. 2021). Here, only one ground of many is unsupported—and it is a ground that the IJ and BIA cited for mere ancillary support.

The BIA sustained this adverse credibility determination in the context of denying Liu's appeal of the IJ's denial of his asylum claim. Because we conclude that this determination is supported by substantial evidence, we deny Liu's petition as it pertains to the asylum claim.

The BIA also relied on the adverse credibility determination in denying Liu's appeal with respect to his withholding of removal and CAT claims. We deny

Liu's petition for review as it pertains to those claims as well. A petitioner who is ineligible for asylum is generally also ineligible for withholding of removal, which imposes a higher burden of proof. *See Villegas Sanchez v. Garland*, 990 F.3d 1173, 1183 (9th Cir. 2021) (citing *Zehatye v. Gonzales*, 453 F.3d 1182, 1190 (9th Cir. 2006)). And while an asylum-based adverse credibility determination does not necessarily doom a CAT claim, *see Kamalthas v. I.N.S.*, 251 F.3d 1279, 1284 (9th Cir. 2001), Liu fails to identify any agency error that would warrant remanding for further consideration of his request for CAT relief.[3]

**PETITION DENIED.**

---

[3] The relevant section of Liu's brief to this court merely recites background law related to CAT relief and adds the following sentence: "While in detention, Petitioner was kicked and shocked with an electric baton for over a minute while forced to stand in a puddle of water, treatment that Petitioner contends is tantamount to torture." This description of a contention does not amount to an argument that the BIA erred in affirming the IJ's denial of Liu's CAT claim. *See Martinez-Serrano v. INS*, 94 F.3d 1256, 1259 (9th Cir. 1996).

Liu also failed to exhaust any argument that, even assuming his lack of credibility, the remaining credible evidence was sufficient to support his CAT claim. His entire argument in support of that claim comprised the following statements:

> Additionally, the IJ erred in denying the respondent's request for relief under CAT. As explained above the respondent did testify credibly and based on his credibly [sic] testimony it is more likely than not he will be tortured if he is removed to China. Country conditions support his claim that the one child policy remains intact. Tactics used in detention may include physical mistreatment and torture. The IJ erred in finding otherwise.

*Baoguo Liu v. Garland*, No. 16-71202

KATZMANN,[*] Judge, concurring:

I concur with the panel's denial of Liu's petition for review and agree with its conclusion that Liu has both waived and failed to exhaust any argument that his CAT claim remains viable despite the IJ's adverse credibility determination. I write separately to state that this disposition should not be construed as weakening the principle that "failure to establish eligibility for asylum does not necessarily doom an application for relief under the United Nations Convention Against Torture." *Farah v. Ashcroft*, 348 F.3d 1153, 1157 (9th Cir. 2003).

The record in this case includes a termination-of-employment letter that corroborates Liu's testimony that he was detained by Chinese officials. The letter states that "Liu Baoguo, an employee of our company, together with his wife, has openly violated the Family Planning Policy of our country, and disturbed and obstructed the routine work of the officials from the Family Planning Office, violated the Public Security Administration Code, and has been detained by the Public Security Institutions, and has created extreme detrimental effect within our company." The IJ discounted this letter, stating that "this is even in conflict for the respondent." But as explained by the panel, this finding by the IJ is unsupported by substantial evidence.

---

[*] The Honorable Gary S. Katzmann, Judge for the United States Court of International Trade, sitting by designation.

The adverse credibility determination in this case, insofar as it is supported by substantial evidence, does not rest on a discrepancy involving the termination letter. It rests instead on discrepancies pertaining to Liu's cohabitation with his wife and daughter at the time of his detention in China—that is, on discrepancies related to Liu's ID and household registration, the divorce decree, and the address that Liu listed in his asylum application. These, as the BIA correctly noted, pertain to "events central to the [Liu's] asylum claim." But unlike an asylum claim, which in Liu's case requires establishing resistance on behalf of a person "who has been forced to abort a pregnancy or to undergo involuntary sterilization," 8 U.S.C. § 1101(a)(42)(B), a claim under the Convention Against Torture requires establishing only that "the alien is more likely than not to be tortured in the country of removal." 8 C.F.R. § 1208.16(c)(4). To assert a successful CAT claim, Liu did not need to establish that the detention incident described in the termination letter was related to another person's forced abortion.

Liu did not present the termination letter as "[e]vidence of past torture inflicted upon the applicant." *Id.* § 1208.16(c)(3)(i). If he had, the BIA would have been required to conduct a standalone analysis of Liu's CAT claim. In any event, and without suggesting any view as to a hypothetical ultimate outcome, the asylum-related adverse credibility determination did not preordain the CAT claim's fate.