NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARIA DE LOS ANGELES HERNANDEZ ZEPEDA; et al., <br><br> Petitioners, <br><br> v. <br><br> PAMELA BONDI, Attorney General, <br><br> Respondent. | No. 25-1997 <br><br> Agency Nos. <br> A208-885-605 <br> A208-885-606 <br> A208-885-607 <br> A208-885-608 <br><br> MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted January 6, 2026**
San Francisco, California

Before: NGUYEN and BENNETT, Circuit Judges, and MATSUMOTO, Senior District Judge.***

Petitioner Maria de Los Angeles Hernandez-Zepeda ("Petitioner" or "Hernandez-Zepeda") and her sons F.A.M.H., C.H.M.H., and C.A.M.H.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

\*\*\* The Honorable Kiyo A. Matsumoto, United States Senior District Judge for the Eastern District of New York, sitting by designation.

(collectively, "Petitioners"), citizens and natives of El Salvador, petition for review of a decision by the Board of Immigration Appeals ("BIA") upholding an Immigration Judge's ("IJ") denial of asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").[1] Petitioners sought relief based on Hernandez-Zepeda's witness of a murder, three threatening voicemails to her son, C.A.M.H., and one in-person verbal threat. The IJ denied Petitioners' claims, and the BIA affirmed. We have jurisdiction under 8 U.S.C. § 1252. Reviewing the agency's factual findings for substantial evidence and its legal conclusions de novo, *see Flores Molina v. Garland*, 37 F.4th 626, 632 (9th Cir. 2022), we deny the petition for review.

Substantial evidence supports the BIA's finding that Hernandez-Zepeda failed to carry her burden of proof on her asylum and withholding claims to establish a causal nexus between her alleged harms and her asserted protected grounds— membership in three particular social groups ("PSGs") and two political opinions. None of Petitioner's asserted protected grounds are both legally cognizable and "one central reason" or "a reason" for her alleged harms. *See Barajas-Romero v. Lynch*, 846 F.3d 351, 358 (9th Cir. 2017) (holding the protected ground must be "one central

[1] Because F.A.M.H, C.H.M.H, and C.A.M.H are derivative beneficiaries on Hernandez-Zepeda's asylum applications as the children of Hernandez-Zepeda, this disposition will generally refer to the singular Petitioner Hernandez-Zepeda.

reason" for her alleged harms for asylum claims, and "a reason" for her alleged harms for her withholding claims).

First, substantial evidence supports the BIA's finding that "Salvadoran women who are perceived as whistleblowers against gang criminal activity and targeted for retaliation by the gang to be silenced" and "Salvadoran women who are perceived as witnesses against gang criminality and targeted for retaliation by the gang to be silenced" were neither defined with particularity nor socially distinct groups. Neither group is defined with particularity because they could "encompass[] 'anyone in [El Salvador] who is a potential witness to anything that can be characterized as crime committed by a gang member,'" and are therefore "not 'discrete' and lack[] 'definable boundaries.'" *Aguilar-Osorio v. Garland*, 991 F.3d 997, 999 (9th Cir. 2021). For the same reason, we held the proposed social group "witnesses who . . . could testify against gang members based upon what they witnessed" to be not cognizable in *Aguilar-Osorio*, and specifically contrasted this group with "Salvadoran witnesses *who testified in open court* against gang members," which "we deemed cognizable in *Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1092 (9th Cir. 2013)." *Id.* (emphasis added). Hernandez-Zepeda did not testify in open court, and in fact did not report the criminal activity to police, and so has not alleged a sufficiently particular social group.

Further, Hernandez-Zepeda has failed to provide evidence other than her own

testimony that Salvadoran "society in general perceives, considers, or recognizes" witnesses to or whistleblowers against gang criminal activity "to be a group." *Villegas Sanchez v. Garland*, 990 F.3d 1173, 1181 (9th Cir. 2021) (internal quotations omitted). Because "'the social distinction inquiry . . . will ordinarily demand some type of corroborative, objective evidence' other than [Petitioner's] testimony," the BIA did not err in affirming the IJ's determination that these two groups lacked social distinction. *Id.* (quoting *Diaz-Torres v.* Barr, 963 F.3d 976, 982 (9th Cir. 2020)).

Second, substantial evidence also supports the agency's finding that even if the PSG "Salvadoran women" was legally cognizable, there was no causal nexus between Hernandez-Zepeda's membership in this group and her alleged harms. The BIA and IJ did not err in determining that the use of the slur "bitches" by the man who threatened the witnesses at the wake was insufficient to show that the persecutors acted because Petitioner was a woman. The threat was made to a generalized group of 30 to 35 people and there is no evidence indicating that the group was composed only of women. Where there is insufficient evidence that a persecutor was motivated by gender, the record "does not compel the conclusion" that Hernandez-Zepeda was threatened because she was a woman. *See Rodriguez-Zuniga v. Garland*, 69 F.4th 1012, 1019 (9th Cir. 2023).

Third, substantial evidence supports the BIA's finding that Petitioner did not

establish she was persecuted because of an imputed "anti-gang" or "feminist" political opinion. There is no evidence in the record that Petitioner expressed any "anti-gang" or "feminist" political opinion, or that the persecutors were motivated by a belief that Petitioner had expressed "anti-gang" or "feminist" opinions. The only evidence to support Hernandez-Zepeda's claim that the gang perceived her to be "anti-gang" is her testimony that the first threatening voicemail said that "they heard rumors" that "we were speaking out against them." But the evidence in the record does not compel the conclusion that the gang members imputed a political opinion to Hernandez-Zepeda at all, rather than merely expressing that they believed she had reported them to the police. *See Soriano v. Holder*, 569 F.3d 1162, 1164–65 (9th Cir. 2009), *overruled on other grounds by Henriquez-Rivas v. Holder*, 707 F.3d 1081 (9th Cir. 2013). Moreover, a petitioner's refusal to acquiesce to gang threats alone is also not a "sufficiently conscious and deliberate decision[] or act[] such that society would naturally attribute certain political opinions to the petitioner based on those acts." *Rodriguez-Zuniga*, 69 F.4th at 1017 (citation modified).

The BIA did not err in finding that it "need not address the remaining appellate arguments" on Hernandez-Zepeda's asylum and withholding claims because the "lack of nexus to a protected ground is dispositive." *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach.").

The BIA thus did not need to reach or analyze any additional asylum and withholding arguments including Hernandez-Zepeda's arguments regarding state action and internal relocation. Because the BIA explicitly declined to reach those issues, they also lie outside the scope of the Court's review. *See Brezilien v. Holder*, 569 F.3d 403, 406, 411 (9th Cir. 2009) (When a petitioner raises arguments that "the BIA failed to address," the "issues are not properly before us" and "we do not reach the merits of those arguments.").

Substantial evidence also supports the agency's denial of CAT protection because Petitioners have not shown that it is more likely than not that they will be tortured by or with the consent or acquiescence of the government if returned to El Salvador. *See Aden v. Holder*, 589 F.3d 1040, 1047 (9th Cir. 2009).

**PETITION DENIED**.[2]

---

[2] Petitioners' motions to stay removal, Dkt. No. 3 and Dkt. No. 4, are denied.