NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

MAR 10 2026

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JESSIE PEREZ,<br><br>    Petitioner,<br><br> v.<br><br>PAMELA BONDI, Attorney General,<br><br>    Respondent. | No. 20-72631<br><br>Agency No. A205-719-246<br><br>MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 6, 2026**
Pasadena, California

Before: WARDLAW, DESAI, and DE ALBA, Circuit Judges.

Petitioner Jessie Perez seeks review of a Board of Immigration Appeals'

("BIA") decision dismissing her appeal from an immigration judge's ("IJ") order

denying her applications for asylum, withholding of removal, and protection under

the Convention Against Torture ("CAT"). We have jurisdiction pursuant to 8

---

 * This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

 ** The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

U.S.C. § 1252 and grant in part and deny in part the petition.

Where, as here, the BIA agrees with the IJ's reasoning and supplements that reasoning with its own analysis, we review both decisions to the extent the BIA, in reaching its decision, relied on the grounds considered by the IJ. *Bhattarai v. Lynch*, 835 F.3d 1037, 1042 (9th Cir. 2016); *Santiago-Rodriguez v. Holder*, 657 F.3d 820, 829 (9th Cir. 2011). We review the BIA's factual findings under the substantial evidence standard and review de novo both legal questions and mixed questions of law and fact. *Mendoza-Pablo v. Holder*, 667 F.3d 1308, 1312 (9th Cir. 2012).

1.      In dismissing Perez's appeal with respect to her asylum and withholding of removal claims, the BIA failed to follow its own precedents as articulated in *Matter of A-B-*, 27 I. & N. Dec. 316 (A.G. 2018)[1] and *Matter of M-E-V-G-*, 26 I. & N. Dec. 227 (BIA 2014). The IJ, as affirmed by the BIA, denied these claims solely on the ground that Perez's proposed particular social group ("PSG"), "women abused by significant others, husband or boyfriend," is not cognizable. We review de novo the legal question of whether a PSG is cognizable given the facts contained in the record. *Conde Quevedo v. Barr*, 947 F.3d 1238, 1241–42 (9th Cir. 2020).

Because the BIA committed legal error as to cognizability, we grant Perez's

---

[1]      Reinstated by *Matter of S-S-F-M-*, 29 I. & N. Dec. 207 (A.G. 2025).

petition for review with respect to these claims and remand for the agency to determine in the first instance whether "women abused by significant others, husband or boyfriend" is a cognizable PSG and if so, whether Perez's persecution was "on account of" her membership in that group. *See Antonio v. Garland*, 58 F.4th 1067, 1075–76 (9th Cir. 2023) ("Failure to address a social group claim, or failure to analyze such a claim under the correct legal standard, constitutes error and requires remand.") (citation modified).

First, relying on *Matter of A-B-*, the BIA asserted that "most asylum claims based on domestic violence would not satisfy the nexus or state action prongs of the persecution analysis because the harm is usually 'private violence' perpetrated against the victim for personal reasons, rather than on account of a protected ground" and that the proposed PSG "is defined in an impermissibly circular fashion by the harm to its membership." However, in *Diaz-Reynoso*, we "recognize[d] that the Attorney General began the opinion in *Matter of A-B-* by offering some general impressions about asylum and withholding claims based on domestic violence and other private criminal activity," but determined that "the holding of *Matter of A-B-* plainly does not endorse any sort of categorical exception based on these remarks and observations." 968 F.3d 1070, 1079 (9th Cir. 2020). We clarified that "the conclusion that a proposed social group is impermissibly circular may not be reached summarily merely because the

proposed group mentions harm." *Id.* at 1086. Instead, the BIA must consider on a case-by-case basis whether the group is cognizable "if it is defined without reference to the fact of persecution." *Id.* at 1080. Here, neither the BIA nor the IJ assessed whether Perez's ex-boyfriend Omar abused her *because* she was a woman, and thus "avoided the case-specific inquiry demanded by *Matter of A-B-* and the BIA's precedents." *See id.* at 1088.

Second, the BIA impermissibly rejected her PSG because it was "large and amorphous and includes terms that defy precise definition." *See Perdomo v. Holder*, 611 F.3d 662, 668–69 (9th Cir. 2010) (reversing BIA's finding that "all women in Guatemala" is an overly broad and internally diverse group and warning that the "size and breadth of a group alone does not preclude [it] from qualifying as [a PSG]"). We have "clearly acknowledged that women in a particular country, regardless of ethnicity or clan membership, could form a particular social group." *Id.* at 667; *see also Mohammed v. Gonzales*, 400 F.3d 785, 797 (9th Cir. 2005) ("Few would argue that sex or gender, combined with clan membership or nationality, is not an 'innate characteristic,' 'fundamental to individual identit[y].'"). Perez also defines significant others as husband or boyfriend, "provid[ing] a clear benchmark for determining who falls within the group." *See Nguyen v. Barr*, 983 F.3d 1099, 1103 (9th Cir. 2020) (internal quotation marks and citation omitted). By focusing only on the size of the PSG, the BIA did not engage

4

with any evidence that established "whether the group would be recognized, in the society in question, as a discrete class of persons." *Ramirez-Munoz v. Lynch,* 816 F.3d 1226, 1228 (9th Cir. 2016) (citation modified).

Third, the BIA's finding that there is insufficient evidence to establish social distinction is not supported by substantial evidence in the record. Respondent argues that Perez fails to "point[] to any evidence in the record" demonstrating "that Peruvian society recognizes [female] victims of violence perpetrated by 'significant others' as set apart or distinct from female victims [of] violence, generally." This distinction is arbitrary and unconvincing. *See Acevedo Granados v. Garland*, 992 F.3d 755, 763 (9th Cir. 2021) (concluding that "[t]he social distinction inquiry" does not ask "whether the group is sufficiently distinguishable from other, similarly-persecuted groups" and that "[t]he possibility that individuals" within a PSG "are subsumed in a larger group of persecuted individuals . . . does not control the social distinction analysis, because the question is whether individuals" within that group "are singled out for greater persecution than the general population").

Perez submitted, inter alia, the 2015 Department of State Human Rights Report for Peru ("Country Report"). Under the header of "Women" and the sub-header of "Rape and Domestic Violence," the Country Report states that "[t]he legal framework governing women's . . . protections is comprehensive and well

5

defined" but that the "[a]pplication and enforcement of the law, however, were severely lacking." It further asserts that "[t]he law prohibits domestic violence, and penalties range from one month to six years in prison" and that "[t]he law requires police investigation of domestic violence to take place within five days and obliges authorities to extend protection to *female victims of domestic violence*." As such, if Perez reported the domestic violence Omar committed, the laws in place in Peru would protect her if enforced. *See Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1092 (9th Cir. 2013) (en banc) (noting that Salvadoran society recognized people testifying against gang members as distinct in its society as exemplified by the "Salvadoran legislature enact[ing] a special witness protection law in 2006 to protect people who testify against violent criminal elements").

The Country Report also highlights that "[t]he Ministry of Women and Vulnerable Populations operated the *Women's Emergency Program*, which included service centers that combined police, prosecutors, counselors, and public welfare agents to help victims of *domestic abuse*." *See Pirir-Boc v. Holder*, 750 F.3d 1077, 1084 (9th Cir. 2014) ("Evidence such as country conditions reports, expert witness testimony, and press accounts of discriminatory laws and policies, historical animosities, and the like may establish that a group exists and is perceived as 'distinct' or 'other' in a particular society.") (quoting *Matter of M-E-*

6

*V-G-*, 26 I. & N. Dec. at 244).

In sum, because Peru recognizes and attempts to protect women who are victims of domestic violence—and "women abused by significant others" fit within that definition—the record compels the conclusion that the proposed PSG is recognized as socially distinct in Peruvian society. *Cf. Villegas Sanchez v. Garland*, 990 F.3d 1173, 1181–82 (9th Cir. 2021) (concluding that "generalized statistics" about violence against women in El Salvador were insufficient because the country report "does not address how Salvadoran society perceives" the proposed PSGs).

2.      Based on the record here, "a reasonable factfinder would not be compelled to find [Perez] eligible for CAT protection" because her fears of torture are speculative. *See Tamang v. Holder*, 598 F.3d 1083, 1095 (9th Cir. 2010). If she is forced to return to Peru, Perez asserts that she would "receive the beating of [her] life" from Omar and that he "would lock [her] up." Perez also fears Omar's mother because she has threatened to "take away [her] son" if Perez returns to Peru. However, record evidence such as the fact that Omar lives in the United States and sees Perez regularly, and that Perez has entrusted Omar's mother with the custody of her daughter, undercuts these assertions. *See Andrade v. Garland*, 94 F.4th 904, 915 (9th Cir. 2024) ("Because the allegations of torture rest on a hypothetical chain of events, CAT relief cannot be granted unless each link in the

7

chain is more likely than not to happen.") (citation modified).

We therefore **GRANT** the petition as to the asylum and withholding of removal claims, **DENY** the petition as to the CAT claim, and **REMAND** for further proceedings consistent with this disposition. Having granted in part the petition, we **DENY AS MOOT** the pending motions to stay removal (Dkt. Nos. 1, 3).

**PETITION GRANTED IN PART, DENIED IN PART, AND REMANDED.**